2000 OK 86

ARROW TOOL & GAUGE and Sentry Claims Service, Petitioners,

v.

Deborah J. MEAD and The Workers' Compensation Court, Respondents.

No. 92,782.

Supreme Court of Oklahoma.

Oct. 31, 2000.

Michael W. McGivern and Andrew D. Downing, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, OK, for Petitioners.

John L. Harlan, John L. Harlan & Associates, P.C., Sapulpa, OK, for Respondents.

OPALA, J.

¶ 1 The dispositive issue tendered for corrective relief on certiorari is whether claimant's motion to reopen her workers' compensation claim, based upon a change in her condition, was filed within the time prescribed by the provisions of 85 O.S. Supp. 1997 § 43(C). *We answer in the affirmative.*

I

### ANATOMY OF LITIGATION

¶ 2 On 13 January 1990 Deborah J. Mead (Mead or claimant), a press operator for Arrow Tool & Gauge (Arrow),[1] felt a popping sensation in her left knee as she swept the floor around her work area. When she awoke the next day with a swollen knee, she sought medical attention. The condition of her knee failed to improve. Over the next year Mead underwent two knee surgeries. Pain spread to other parts of both her lower extremities as well as to her lower back. After receiving temporary total disability payments for approximately two years, Mead filed a claim for compensation, which named as respondents Arrow and its insurance carrier, Sentry Claims Service. On 15 January 1993 Mead was awarded compensation for

---

1. Unless otherwise indicated, all further references to Arrow include its insurer, Sentry Claims Service.

permanent partial disability.[2] An order nunc pro tunc—to correct an error in the award's calculation—was entered on 26 January 1993.

¶3 The next month Mead moved the trial tribunal to provide her with vocational rehabilitation services.[3] This was followed in March by her motion to find Arrow in default for want of payment upon the January 15/26 award and to make that award immediately due and payable in its entirety.[4] These two motions were disposed of by separate orders entered on 16 August 1993.[5] In one of these the trial tribunal ordered that Mead be furnished with a vocational rehabilitation evaluation; in the other, Mead's motion to commute (to a lump sum) payments due under the January 15/26 permanent disability award was denied. Four and one-half years later, on 26 February 1998, Mead moved to reopen her claim (on a change in condition) to authorize additional surgery on her left knee. Arrow responded by denying that a change had occurred. It also asserted that Mead's quest was time-barred by the provisions of 85 O.S. Supp.1997 § 43(C).

¶4 On 16 July 1998 the trial tribunal rejected Arrow's time-bar defense, ruling that Mead's motion had been filed within the time prescribed by statute—260.5 weeks *from the date of the last order entered in the case*, which was identified as that of 16 August 1993.[6] The trial tribunal also found that Mead had undergone a change of physical condition for the worse *since the last order* had been entered and directed Arrow to provide her with all reasonable and necessary medical care and treatment to correct her worsened condition. Arrow appealed to a three-judge review panel (the panel). On 25 February 1999 the panel adopted the trial tribunal's order.

■ ¶5 Arrow then sought review of the panel's order.[7] In a single assignment of error, it argued that the panel erred in ruling that Mead's request for relief was timely brought. The Court of Civil Appeals, Div. III, agreed with Arrow that Mead's quest to reopen was initiated *after* the statutory time for so doing had expired. We granted Mead's certiorari petition and now vacate the Court of Civil Appeals' opinion, sustaining the panel's order which adopted the trial judge's conclusions.

## II

### STANDARD OF REVIEW

■ ¶6 The dispositive issue is whether Mead's motion to reopen on change in her

---

2. The trial tribunal found that Mead sustained 30% permanent partial disability to her left knee, 10% permanent partial disability to her right knee, 8% permanent partial disability to her left foot, and 12% permanent partial disability to her right foot. Denied to Mead was compensation for permanent partial disability for injury to her right hip and lower back.

3. Vocational rehabilitation services are authorized by the provisions of 85 O.S. Supp.1992 § 16. For *subsequent* amendments, *see* 85 O.S. Supp.1999 § 16.

4. *See* the provisions of 85 O.S. Supp.1992 § 41(C), which in pertinent part are:
   "... Failure for ten (10) days to pay any final award or any portion thereof, as ordered shall immediately entitle the beneficiary to an order finding the respondent and/or insurance carrier to be in default and all unpaid portions, including future periodic installments unpaid, shall immediately become due and may be immediately enforced as provided by Section 42 of this title."
   The provisions of 85 O.S.1991 § 42 authorize the trial tribunal to *certify* its award for filing in the office of the court clerk in any county, whereup-

on the award receives the status of a district court judgment. For *subsequent* amendments, *see* 85 O.S. Supp.1999 § 42.

5. In a pre-hearing order filed on 12 April 1993 the trial tribunal directed Arrow to "furnish claimant with vocational rehabilitation evaluation by LDS Consultants, for which a separate order will be issued forthwith." In June Mead's attorney notified the trial tribunal that the order sought for a vocational rehabilitation evaluation had not yet been received. That order was then sent on 16 August 1993.

6. The trial tribunal entered two orders on 16 August 1993. In the order rejecting Arrow's time-bar defense, the trial judge did not specify which of the two earlier orders he had in mind or whether he was referring to both.

7. Because the panel's intracourt reexamination of the trial judge's disposition replaces by substitution the earlier decisional stage, the panel's order alone stands for review as the Workers' Compensation Court's decision. *Parks v. Norman Municipal Hosp.*, 1984 OK 53, ¶5, 684 P.2d 548, 552.

condition stands time-barred by the provisions of 85 O.S. Supp.1997 § 43(C). Resolution of this question, *one of first impression,* calls for ascertaining the meaning of certain critical words found in the statutory text. Our task is to consider whether the panel correctly construed those words. Statutory construction presents a question of law.[8] A compensation tribunal's *legal rulings,* like those by a district court judge, are on review subject to an appellate court's plenary, independent and nondeferential reexamination.[9] We hence review *de novo* the panel's ascription of the meaning that is to be attributed to the critical part of the statutory text.[10]

### III

### MEAD'S POSTAWARD MOTION TO REOPEN ON CHANGE IN CONDITION WAS FILED WITHIN THE TIME PRESCRIBED BY THE PROVISIONS OF 85 O.S. SUPP.1997 § 43(C)

¶ 7 The law governing the reopening of a compensation claim upon a change in condition is that which was in effect at the time the claimant's condition underwent a change, and not the law in effect at the time of the injury or the law in force at the time of the original award.[11] Mead's condition is deemed to have undergone a change on 16 January 1998, when her physician made a medical determination that her condition had worsened.[12] The statutory time-bar applicable to Mead's reopening quest is hence governed by the terms of 85 O.S. Supp.1997 § 43(C). That statute provides in pertinent part:

"C. The jurisdiction of the Court to reopen any cause upon an application based upon a change in condition shall extend for that period of time measured by the maximum number of weeks that could be awarded for the particular scheduled member where the change of condition occurred, or for three hundred (300) weeks in the case of injuries to the body or injuries not otherwise scheduled under the provisions of Section 22 of this title, and unless filed within said period of time after the date of the *last order,* shall be forever barred. An order denying an application to reopen a claim shall not extend the period of the time set out herein for reopening the case." (emphasis added)

¶ 8 *Mead* argues the words "last order", found in the penultimate sentence of the quoted text, clearly and unambiguously refer to the trial tribunal's most recently issued order, regardless of the order's substance or content. *Arrow* urges that such a construction would render any limitations period utterly meaningless. This is so because a claimant could retrigger *ad infinitum* the applicable limitation by repeatedly bringing immaterial, collateral post-award motions and obtaining orders that grant or deny those successive motions. To avoid this absurd result, Arrow exhorts us to hold that the words "last order" in § 43(C) encompass only the *original order* that determines the presence or absence of permanent disability. We disagree and, for the reasons to be stated, declare today that for purposes of § 43(C) a "last order" *is only that which substantially affects the monetary, medical, or rehabilitative benefits conferrable by the workers' compensation law.*

¶ 9 A permanent disability award made under the provisions of the Workers' Com-

8. *Mangrum v. Fensco, Inc.,* 1999 OK 78, ¶ 4, 989 P.2d 461, 462; *Wilson v. Wilson,* 1999 OK 65, ¶ 3, 987 P.2d 1210, 1212; *Anderson v. Dep't. of Human Services,* 1995 OK CIV APP 136, ¶ 9, 916 P.2d 846, 848.

9. *Neil Acquisition L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, n. 1, 932 P.2d 1100, 1106, n. 1; *Baptist Medical Center v. Pruett,* 1999 OK CIV APP 39, ¶ 11, 978 P.2d 1005, 1008.

10. *Wilson v. Wilson, supra* note 8 at ¶ 3, at 1212; *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

11. *Earl W. Baker & Co. v. Morris,* 1935 OK 591, 54 P.2d 353, 355; *Wolfenbarger v. Safeway Stores, Inc.,* 1990 OK CIV APP 65, ¶ 6, 798 P.2d 1093, 1094.

12. *Cf. Oklahoma Gas & Electric Co. v. State Industrial Court,* 1961 OK 281, ¶ 13, 366 P.2d 609, 613. *See also, Wolfenbarger v. Safeway Stores, Inc.,* 1990 OK CIV APP 65, ¶¶ 6–7, 798 P.2d 1093, 1094–95.

pensation Act (the "Act")[13] constitutes a solemn adjudication that a worker's healing period has come to an end and his/her condition (or state of health) has reached the very optimum that is then medically attainable.[14] Once adjudged to have permanent disability, a worker is entitled to medical attention only upon establishing recurrence of the post-award healing period in a reopening proceeding under the provisions of 85 O.S.1991 § 28.[15] That section provides in pertinent part:

> "Upon its own motion or upon the application of any party in interest, on the ground of a change in conditions, the Court may at any time review any award, and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Workers' Compensation Act, . . . ."

¶ 10 Originally enacted in 1915[16] in substantially the same form as that just quoted here, § 28 provided statutory *authority for the continuing jurisdiction* of the trial tribunal to entertain reopening claims—those for a modification of compensation due one upon a changed condition—without any time-bar for commencement of such proceeding. Although § 28 has never been amended in this respect, it is no longer true that lapse of time does not affect the commencement of a reopening claim. This is so because in 1933 the legislature amended § 43 of the Act by adding a provision that established a point in time beyond which a claim could no longer be reopened.[17]

¶ 11 Until 1986 (when it was again amended), the 1933 version of § 43 provided in pertinent part,

> "The jurisdiction of the [tribunal] . . . to reopen any cause upon an application based upon a change in condition shall extend for the maximum period of time measured by the number of weeks for which compensation could have been awarded by the [tribunal] . . . had the condition of the claimant existed at the time *original award* was made thereon and unless filed within said period of time, same shall be forever barred." (emphasis added)

Without specifically discussing the conflict between the seemingly unlimited time prescribed by § 28 and the later-enacted time-bar imposed by § 43, the court held in 1935 that the latter's enactment ended the tribunal's[18] unrestricted authority to hear claims based on a changed condition. It prescribed a time-bar for commencing reopening quests.[19] Until the 1986 amendment of

---

**13.** The Workers' Compensation Act is codified at 85 O.S.1991 and Supp.1997 §§ 1 et seq. For *subsequent* amendments, *see* 85 O.S. Supp.1999 §§ 1 et seq.

**14.** *Bill Hodges Truck Co. v. Gillum*, 1989 OK 86, ¶ 6, 774 P.2d 1063, 1065; *Hondo Petroleum Co. v. Piearcy*, 1962 OK 216, ¶ 8, 376 P.2d 1012, 1013.

**15.** *Hondo Petroleum Co. v. Piearcy, supra* note 14 at ¶ 6, at 1013 ("[R]ecurrence of temporary incapacity either before or after a determination of permanent partial disability is made constitutes a change of condition within the contemplation and purview of 85 O.S.1961 § 28, and affords a proper basis for an order allowing additional compensation.").

**16.** *See*, Laws 1915, c. 246, Art. 2, § 12.

**17.** *See*, Laws 1933, c. 29, p. 68, § 4, emerg. eff. May 3, 1933. Prior to its amendment, the predecessor to § 43, Oklahoma Statutes § 13367, said nothing about reopening a case. It barred the right to claim compensation unless a claim was filed with the Commission within one year after an injury.

**18.** From the inception of the Act until 1959, the tribunal hearing claims under the Act was an administrative agency known as the State Industrial Commission. *See*, Laws 1915, c. 246, Art.1 § 3, eff. July 1, 1915, codified at Oklahoma Statutes 1915 § 3782d (2). After several permutations, that agency was transformed in 1959 into a court of record and renamed the State Industrial Court. Laws 1959, title 85, c. 4, p. 397, § 1, emerg. eff. June 16, 1959. In 1977 the court was given its present designation—that of the Workers' Compensation Court. Laws 1977, c. 234, § 2, eff. July 1, 1978.

**19.** *Earl W. Baker & Co. v. Morris*, 1935 OK 591, 54 P.2d 353, 354. *See also, Pickett v. Oklahoma Department of Human Services*, 1996 OK CIV APP 142, ¶ 6, 932 P.2d 543, 545 (". . . [W]e hold § 43(C), being the specific and latest . . . [enactment] . . . on the issue, governs and controls the periods in which to seek reopening of the case to the exclusion of the § 28 'at any time' language.").

§ 43(C),[20] this court consistently construed that section's applicable time period as running from the date of the determination of the presence or absence of permanent disability resulting from an injury.[21]

¶ 12 When the legislature amended § 43(C) in 1986, it changed the language describing the event from which the reopening bar runs. The statute stated in pertinent part:

"C. The jurisdiction of the Court to reopen any cause upon an application based upon a change in condition shall extend for that period of time measured by the maximum number of weeks that could be awarded for the particular scheduled member where the change of condition occurred, or for three hundred (300) weeks in the case of injuries to the body or injuries not otherwise scheduled under the provisions of Section 22 of this title, and unless filed within said period of time after the date of the *last order*, shall be forever barred." (emphasis added)

¶ 13 Only one published extant decision has addressed the legislature's intent in replacing the words "original award" with "last order" in § 43(C). In *Cable Vision of Muskogee v. Tracy*,[22] *the intermediate appellate court* held that the amendment of § 43(C) which changed the text's words "original award" to the phrase "last order" had effected a change in the law.[23] While the appellate courts had always construed the words "original award" to mean an order granting or denying permanent disability, the intermediate appellate court held that the new language encompassed "the previous order entered, whether or not there was an award granted, once it has been shown an accidental injury arising out of and in the course of employment has been sustained by the claimant." [24] The last order entered in *Tracy* prior to the reopening quest that was pressed there for review had been an order denying a previous application to reopen. Since the motion to reopen under consideration in that case had been filed within 300 weeks of the order that denied the earlier application to reopen, the court held that the reopening quest had been timely made.[25]

¶ 14 Shortly after *Tracy* and perhaps in response to its pronouncement, § 43(C) *was again amended* by adding a sentence to the end of its text that excludes from the phrase "last order" one that denies an application to reopen a claim.[26]

¶ 15 The goal of any inquiry into the meaning of a legislative enactment is to ascertain and follow legislative intent.[27] It is presumed that (a) legislative intent is expressed in a statute's text and (b) the lawmaking body intended that which it expressed.[28] Where the statute is plain and unambiguous, there is no room for judicial construction that would extend its ambit beyond the scope of the plain and unambiguous language.[29] Only when the circumstances clearly indicate that in enacting the statute the legislature has overlooked something will this court apply rules of statutory construction in an effort to clarify and make sensible

**20.** Section 43 was divided into paragraphs in 1985. The reopening provision was designated as paragraph (C). *See,* Laws 1985, c. 266, § 4, eff. Nov. 1, 1985.

**21.** *United States Gypsum Co. v. Pendleton,* 1959 OK 114, 340 P.2d 467 (syllabus 2 by the court); *Upshaw v. Champlin Refining Co.,* 1944 OK 94, ¶ 12, 146 P.2d 1008, 1009; *State Hwy. Comm'n v. State Industrial Comm'n,* 1944 OK 92, 146 P.2d 109 (syllabus 2 by the court).

**22.** 1994 OK CIV APP 57, 876 P.2d 743.

**23.** *Id.,* at ¶ 11, 876 P.2d at 746.

**24.** *Id.,* at ¶ 10, 876 P.2d at 746.

**25.** *Id.*

**26.** *See,* Laws 1997, c. 361, § 12, eff. Nov. 1, 1997, which adds the following: "An order denying an application to reopen a claim shall not extend the period of the time set out herein for reopening the case."

**27.** *Cooper v. State ex rel. Dep't. of Public Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466, 468.

**28.** *Nealis v. Baird,* 1999 OK 98, ¶ 55, 996 P.2d 438, 460.

**29.** *Ross v. Peters,* 1993 OK 8, n. 17, 846 P.2d 1107, 1119, n. 17; *TRW /Reda Pump v. Brewington,* 1992 OK 31, ¶ 5, 829 P.2d 15, 20; *Forston v. Heisler,* 1961 OK 198, ¶ 11, 363 P.2d 949, 951.

an act's purview.[30] When construing a statute which has been amended, we are mindful that the legislature may have intended either (a) to effect a change in the existing law, or (b) to clarify that which previously appeared doubtful.[31]

¶ 16 Although the parties in the case under review have ably pressed their respective positions, *we are not persuaded that either captures the true intent of the legislative change in contest here.* Contrary to Arrow's argument, we are convinced that the 1986 amendment of § 43(C) was intended to effect a change in the existing law. Judicial construction of the term "original award", found in the pre 1986 version of § 43, was then well-established. There was no need to clarify what was not in doubt. Had the legislature intended to retain the judicially settled term "original award" as the referent for determining the timeliness of a reopening claim, it would have left those words undisturbed or inserted in the amended statute other words that would more precisely circumscribe the triggering event.

¶ 17 Neither may we accept that construction of § 43(C) which is pressed on us by Mead. In light of the purpose of the workers' compensation regime, its legislative development, and our past jurisprudence, it is inconceivable that the law-making body would have intended a reopening period of potentially unlimited duration, disconnected from the mainstream of regular compensation-awarding process.

■■■ ¶ 18 The standard we fashion today for an order to qualify under § 43(C) as a "last order" gives effect to the legislature's clearly expressed intent to alter the event that triggers the time-bar for reopening a claim on changed condition. It also avoids a construction which would render the time-bar potentially meaningless as a matter of practical use. *We hence hold that an order qualifies as a "last order" within the meaning of § 43(C) only if it substantially affects the range of monetary, medical, or rehabilitative benefits conferrable by the workers' compensation law.*[32]

¶ 19 In this case two 16 August 1993 trial tribunal orders were issued: one for a vocational rehabilitation evaluation and another denying the commutation (to a lump sum) of the original permanent disability award. Applying the standard enunciated today, we conclude that the order that directs Arrow to provide a vocational rehabilitation evaluation qualifies under § 43(C) as a "last order".[33]

■■■ ¶ 20 Vocational rehabilitation services are conferrable as a benefit under the provisions of 85 O.S.1991 § 16 of the Act.[34] That section authorizes the trial judge to "refer the employee to a qualified physician or facility for evaluation of the practicability of, need for and kind of rehabilitation services or training necessary and appropriate in order to restore the employee to gainful employment."[35] An order affording the claimant a vocational rehabilitation evaluation is decisive of the claimant's eligibility for vocational rehabilitation benefits. It is connected to the mainstream of regular compensation process by substantially affecting the monetary, medical, or rehabilitative benefits conferrable by the Act. It hence passes muster as a trigger for the § 43(C) time-bar.

[13, 14] ¶ 21 Lending further support to the norm we fashion by today's pronouncement for a previous order's fitness as a "last order" within the meaning of § 43(C) is its consistency with the criteria which generally govern reviewability of compensation orders.

---

30. *Cox v. Dawson,* 1996 OK 11, ¶ 6, 911 P.2d 272, 276.

31. *Haney v. State,* 1993 OK 41, ¶ 12, 850 P.2d 1087, 1091; *Magnolia Pipe Line Co. v. Okla. Tax Comm'n,* 1946 OK 113, ¶ 11, 167 P.2d 884, 888.

32. An earlier motion to reopen which has been denied cannot extend the period of time for reopening the claim. *See* the last sentence of 85 O.S. Supp.1997 § 43(C).

33. Because we hold that under § 43(C) the order for a vocational rehabilitation evaluation qualifies as a "last order", it is unnecessary to reach for consideration whether the order denying commutation of the original award would also qualify.

34. 85 O.S. Supp.1992 § 16(A). Under § 16 of the Act, an injured worker is entitled to "prompt and reasonable physical rehabilitation services."

35. *Id.*

An order that is reviewable must be one which either *grants or denies an award of compensation or otherwise constitutes a final determination of the rights between the parties.*[36] Many decisions *other* than those affecting permanent disability are deemed reviewable. For example, an order that directs an employer (or his insurance carrier) to pay all reasonable and necessary medical expenses is regarded as reviewable. This is so because medical treatment is *an allowance in the nature of compensation.*[37] Implicit in this teaching is the notion that orders for benefits other than those of a purely monetary character may be treated as the functional equivalent of an award. *An order directing an employer to furnish a vocational rehabilitation evaluation lies in the very same category as one for monetary or medical benefits.* It may hence be accorded equal deference when relied upon as a time-bar trigger in reopening proceedings.

## IV

## SUMMARY

¶ 22 The time-bar for reopening a workers' compensation claim on changed condition is measured from the date of the "last order." In today's *first-impression* construction of that key phrase in 85 O.S. Supp.1997 § 43(C), we hold that the *last order means one that substantially affects the monetary, medical, or rehabilitative benefits conferrable by the Act. An order directing an employer (or its insurance carrier) to provide a vocational rehabilitation evaluation is one that substantially affects the benefits available under the Act.* It hence qualifies as a last order within the meaning of § 43(C). Mead's quest to reopen her claim, the timeliness of which is to be measured from the date the trial judge's order for a vocational

rehabilitation evaluation was sent to the parties, was hence timely commenced.[38]

¶ 23 COURT OF CIVIL APPEALS' DECISION IS VACATED; WORKERS' COMPENSATION COURT'S ORDER IS SUSTAINED.

¶ 24 ALL JUSTICES CONCUR.

---

**36.** *Toney v. Parker Drilling Co.*, 1982 OK 17, ¶ 2, 640 P.2d 1356, 1357; *Hermetics Switch, Inc. v. Sales*, 1982 OK 12, ¶ 3, 640 P.2d 963, 965.

**37.** *See, e.g., Williams v. Central Dairy Products Co.*, 1951 OK 232, ¶ 10, 236 P.2d 984, 985; *Winter Livestock v. Kroll*, 1996 OK 31,¶ 1, 914 P.2d 660, 661.

**38.** In conjunction with her quest for review Mead sought a review-related counsel-fee award

under the provisions of 20 O.S.1991 § 15.1. COCA's decision, which went against Mead, denied her quest for an attorney's fee. Mead failed to re-press on certiorari her counsel-fee request. This quest is therefore deemed abandoned. In short, she may not now seek an award for services rendered to her in the Court of Civil Appeals. *Hough v. Leonard*, 1993 OK 112, ¶ 15, 867 P.2d 438, 445; *Barnett v. Barnett*, 1996 OK 60, ¶ 13, 917 P.2d 473, 477.