2003 OK CIV APP 4

**Jeff EDWARDS, Plaintiff/Appellant,**

v.

**GENERAL MOTORS ASSEMBLY DIVISION, General Motors Corporation, Defendant/Appellee.**

No. 96,360.

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 19, 2002.

Rehearing Denied Dec. 16, 2002.

---

564

John A. Mantooth, Purcell, for Appellant.

Tia Jones Bibbs, B. Wayne Dabney, Holloway, Dobson & Bachman, Oklahoma City, for Appellee.

Opinion by JOHN F. REIF, Chief Judge.

¶1 This case concerns an appeal by plaintiff Jeff Edwards and a counter-appeal by defendant General Motors, following a jury verdict in favor of plaintiff Edwards on his breach of contract claim against General Motors. The jury determined that Mr. Edwards, a paint mixer for General Motors, should be paid 20% of the first $100,000 saved by General Motors from implementing a cost savings suggestion that he submitted, as provided in the General Motors Employee Suggestion Plan. The cost savings suggestion involved "batch" painting of cars, using certain low-demand colors only on a given day or days. Neither Mr. Edwards nor General Motors have briefed any issue concerning the merits of Mr. Edwards' claim.[1]

¶2 The appeal by Mr. Edwards contends the trial court erred in ruling his claim did not involve a contract for labor or service and, in turn, denying him attorney fees under 12 O.S.2001 § 936. In its counter-appeal, General Motors contends that the trial court erred in awarding Mr. Edwards pre-

judgment interest, specifically arguing that the amount Mr. Edwards was due under the Suggestion Plan could not be determined without trial and determination by the jury. For the reasons that follow, we hold Mr. Edwards was entitled to attorney fees under § 936 and was properly awarded prejudgment interest.

¶3 Whether the compensation that an employee can earn under the Employee Suggestion Plan involves a claim for labor or services within 12 O.S.2001 § 936 depends on the meaning of "labor" and "services" as used in § 936. The trial court expressly found that "Jeff Edwards' suggestion as implemented by General Motors is not labor and services as [used in] Title 12 O.S. § 936."

¶4 Clearly, the trial court resolved the controversy by interpreting the terms "labor" and "services" in § 936. When "[r]esolution of [a] question ... calls for ascertaining the meaning of certain critical words found in [a] statutory text ... a question of law [is presented]." *Arrow Tool & Gauge v. Mead,* 2000 OK 86, ¶6, 16 P.3d 1120, 1123 (footnote omitted). A lower court's "ascription of the meaning that is to be attributed to the critical part of the statutory text" is reviewed *de novo* on appeal; that is, "subject to an appellate court's plenary, independent and nondeferential reexamination." *Id.* (footnotes omitted).

¶5 "The goal of any inquiry into the meaning of a legislative enactment is to ascertain and follow legislative intent." *Id.* at ¶15, 16 P.3d at 1125 (footnote omitted). "It is presumed that (a) legislative intent is expressed in a statute's text and (b) the lawmaking body intended that which it expressed." *Id.* (footnote omitted). "In the process of giving meaning to any statute, the starting point is the plain and ordinary significance of the language employed in the text." *George E. Failing Co. v. Watkins,* 2000 OK 76, ¶7, 14 P.3d 52, 56 (footnote omitted). The legislature has similarly di-

---

1. General Motors did raise issues in its original counter-petition-in-error concerning the merits of the case, but did not support any of the issues on the merits with argument and authority in its briefing. Propositions of error that are raised in a petition-in-error, but not supported by argument and authority in briefing, are deemed abandoned and are not considered on appeal. *Perry v. Meek,* 1980 OK 151, ¶13, 618 P.2d 934, 938.

rected that "[w]ords used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears." 25 O.S.2001 § 1.

¶ 6 In the early case of *State v. Smith*, 1921 OK CR ——, 19 Okla.Crim. 184, 198 P. 879, the Oklahoma Court of Criminal Appeals was called upon to construe the term "servile labor" as used in the "Sabbath breaking" statute. The Court followed the statutory rule of construction cited above and began by considering the meaning of the term "labor." The Court observed, "Labor, in its usual sense, may be defined as 'physical or mental toil; bodily or intellectual exertion, done wholly or partly for a purpose other than the pleasure derived from its performance.'" *Id.* at 880 (citation omitted). In a later case, the Oklahoma Supreme Court would observe, "It is well settled that the term 'labor' is not confined to physical or manual labor." *Diffenbach v. H.H. Mahler Co.*, 1934 OK 170, ¶ 4, 30 P.2d 907, 908 (citation omitted).

¶ 7 In a case that interpreted the Kansas oil and gas lien statute, the Kansas Court of Appeals stated that work performed for the "advancement of the . . . operation of an oil and gas well" would constitute "lienable labor . . . regardless of whether it involves manual or mental toil." *DaMac Drilling, Inc. v. Shoemake*, 11 Kan.App.2d 38, 713 P.2d 480, 486 (1986). In the *DaMac* case, the Kansas Court of Appeals held that the work of a geologist was lienable labor because, "[w]ith the expert knowledge and evaluation of a geologist, costly errors . . . can be avoided [and] development costs can be kept to a minimum so that profits are maximized."

¶ 8 Mr. Edwards' "batch" painting suggestion clearly involved mental toil and intellectual exertion by using expert knowledge to evaluate General Motors' painting component of production. The "batch" painting suggestion was formulated and communicated to General Motors wholly or partly for a purpose other than the pleasure derived from its formulation and communication, specifically to earn the compensation promised by General Motors for formulating and communicating better ways that advance General Motors' operation so that costs can be kept to a minimum and profits maximized. The

"batch" painting suggestion was "labor" as that term is commonly understood and as it is commonly used in statutes addressing the subject of "labor."

¶ 9 "The underlying nature of the action determines the applicability of the § 936 labor-and-services provision [and where] damage arises directly from the rendition of labor or services[,] the provisions of § 936 are applicable." *Cook v. Oklahoma Bd. of Public Affairs*, 1987 OK 22, ¶ 43, 736 P.2d 140, 154 (footnotes omitted). Mr. Edwards' formulation and communication of the "batch" painting suggestion involved the rendition of labor for General Motors. Also, General Motors' failure to pay for such labor (as provided in the Employee Suggestion Plan) was damage that arose from the rendition of labor, not unlike failing to pay an outside consultant for evaluating the operation and formulating a similar cost savings plan.

¶ 10 We hold the trial court erred as a matter of law in ruling "Jeff Edwards' suggestion as implemented by General Motors is not labor and services as [used in] Title 12 O.S. § 936," and in denying Mr. Edwards an attorney fee under § 936. As the prevailing party on a contract claim for labor or service, Mr. Edwards is entitled to "a reasonable attorney fee to be set by the court, to be taxed and collected as costs" as mandated by § 936. Additionally, "[w]henever there is statutory authority to award counsel fees in the trial court, additional fees may also be allowed for services rendered in the appellate court." *Cook*, 1987 OK 22, ¶ 46, 736 P.2d at 154 (footnote omitted).

¶ 11 We grant Mr. Edwards' motion for appellate attorney fees. We reverse the trial court's denial of an attorney fee to Mr. Edwards for counsel fees incurred in the trial court, and remand with directions to determine and award Mr. Edwards a reasonable attorney fee for (1) the necessary and reasonable services of his attorney before the trial court, and (2) the necessary and reasonable services of his attorney before the appellate courts.

¶ 12 Unlike the error in denying attorney fees under § 936, the trial court did

not err in awarding prejudgment interest under 23 O.S.2001 § 6. This statute provides in pertinent part that "[a]ny person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day."

¶ 13 There is no dispute that the right to be paid 20% of the first $100,000 in cost savings realized from an employee's suggestion vests upon completion of the first year of implementation. There was also no dispute over when the first year of implementation of "batch" painting was completed. However, General Motors contends that a dispute did exist over how the savings should be calculated as of the last day of implementation. In particular, General Motors points out that there were disputes over the amount of paint being saved, the price of the paint, and the labor cost being saved.

¶ 14 General Motors asserts that the amount of compensation that Mr. Edwards should recover was not certain or capable of being made certain until the jury resolved disputes over the elements used in calculating savings. In this regard, General Motors stresses that the jury was even instructed that "the amount of damages should be determined ... by defining the amount of savings realized by General Motors ... and awarding Plaintiff 20% of the savings, not to exceed $20,000."

¶ 15 In reviewing the record, there was indeed conflicting testimony about the number of gallons of paint that would be saved, the price per gallon of the paint saved and the labor costs to be saved. However, we do not find these conflicts or resolution of these conflicts to effect the application of § 6. While disputing Mr. Edwards' right to recover, General Motors admitted that its managers calculated cost savings of $86,092.80 from implementing "batch" painting for three colors. The only problem with this calculation is not in the number of gallons of paint saved, the price per gallon or labor costs, but in its omission of other specific savings that were established by undisputed testimony.

¶ 16 In particular, undisputed testimony established that for every gallon of paint saved, General Motors would save the cost of using and disposing of two gallons of solvent needed to clean the painting equipment. Undisputed testimony established that the combined purchase/disposal cost of solvent was $6 per gallon. Undisputed testimony also established that General Motors would save the cost of purchasing and disposing of 3–4 filters per day from "saving three colors a day of paint four days a week." General Motors did not deny these savings would be realized nor offer conflicting evidence concerning the quantity or price of these items.

¶ 17 In calculating the $86,092.80 figure for cost savings, General Motors took the number of gallons of paint saved per week and multiplied that figure by 48 weeks and then multiplied that figure by the price of the paint. General Motors determined that it saved 12 gallons of paint per color per week, or 36 total gallons of paint per week. This same data and formula would also apply to calculating the purchase/disposal savings for solvent. Again, the undisputed testimony revealed that two gallons of solvent were saved for every gallon of paint saved, and the combined purchase/disposal cost for solvent was $6 per gallon. If 36 total gallons of paint are saved each week, then 72 total gallons of solvent are also saved each week. Multiplying 72 times 48 weeks yields 3,456 gallons of solvent saved for 48 weeks. Multiplying 3,456 by $6.00 per gallon yields a solvent purchase/disposal savings of $20,736.00. When this figure is added to the savings of $86,092.80, a total undisputed savings of over $100,000 is determined. The only aspect of Mr. Edwards' recovery of $20,000 that had to be capable of certain computation was a total savings to General Motors that equaled or exceeded $100,000.

¶ 18 Stated another way, General Motors admitted to realizing $86,092.80 in savings during the first year of implementation of "batch" painting, while the undisputed evidence from Mr. Edwards reflected that there was *at least* another $20,736.00 in savings omitted from the General Motors calculation. This undisputed evidence from both parties revealed that the savings realized by General Motors in the first year of implementation exceeded $100,000. Positive, uncontradicted and unimpeached testimony that is not inherently improbable, nor self-contra-

dictory, cannot be disregarded, and must control the decision of the court or jury. *See Spillers v. Colby,* 1964 OK 99, ¶ 0, 391 P.2d 895 (syllabus 1).

¶ 19 By awarding Mr. Edwards $20,000 (the maximum amount), it is reasonably clear the jury followed the undisputed evidence to the conclusion that the savings exceeded $100,000 in the first year of implementation. Clearly, "the amount recovered was capable of ascertainment before judgment through calculation by using well-established market values" and, therefore, prejudgment interest was properly awarded. *Cook v. Oklahoma Bd. of Public Affairs,* 1987 OK 22, ¶ 39, 736 P.2d at 153 (footnote omitted). Accordingly, we affirm the trial court's award of prejudgment interest.

¶ 20 THE AWARD OF PREJUDGMENT INTEREST IS AFFIRMED. THE DENIAL OF PLAINTIFF'S REQUEST FOR PREVAILING PARTY ATTORNEY FEES IS REVERSED, AND THIS CASE IS REMANDED FOR THE TRIAL COURT TO DETERMINE AND AWARD A REASONABLE ATTORNEY FEE TO PLAINTIFF (1) FOR PREVAILING ON A CLAIM FOR LABOR, AND (2) FOR THIS APPEAL.

TAYLOR, P.J., and STUBBLEFIELD, J., concur.