OSCN Found Document:DUVALL v. EXPRESS EMPLOYMENT PROFESSIONALS et al.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 DUVALL v. EXPRESS EMPLOYMENT PROFESSIONALS et al.
2025 OK CIV APP 24
Case Number: 122363
Decided: 03/07/2025
Mandate Issued: 07/10/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2025 OK CIV APP 24, __ P.3d __

 

BONNIE LOU DUVALL, Petitioner
vs.
EXPRESS EMPLOYMENT PROFESSIONALS and AIU INSURANCE CO. (NATIONAL UNION FIRE OF PITTS PA), Respondent

PROCEEDING TO REVIEW AN ORDER OF
THE WORKERS' COMPENSATION COMMISSION

SUSTAINED

D. Eliot Yaffe, April Spurgeon, FOSHEE & YAFFEE LAW FIRM, Oklahoma City, Oklahoma, For Petitioner,

Travis A. Fulkerson, Mackenzie M Beach, FULKERSON & CREWS, Tulsa, Oklahoma, For Respondent Express Employment.

E. Bay Mitchell, III, Judge:

¶1 Petitioner Bonnie Lou Duvall (Claimant) seeks review of a Workers' Compensation Commission order which affirms the administrative law judge (ALJ)'s denial of her request for appointment of an independent medical examiner. After de novo review, we agree with the ALJ, the Commission, and Respondents Express Employment Professionals and AIU Insurance Co. (Employer). Title 85A O.S. 2021 §112not mandate the appointment of an independent medical examiner anytime an employer or employee requests one. The ALJ may appoint an independent medical examiner to assist in determining any issue before the Commission. Id., §112(B). If, upon an employer or employee's request for an independent medical examiner, the ALJ determines an appointment is warranted, the ALJ shall select the independent medical examiner within ten days. Id., §112(C). The denial of Claimant's request for an independent medical examiner is not affected by error of law or clearly erroneous in view of the reliable, material, probative and substantial competent evidence. Accordingly, we sustain.

¶2 On April 3, 2023, Claimant sustained an injury to her left hand and wrist while working as a machine operator on the packaging line at Midwestern Pet Foods. Claimant was treated at the Grady County Memorial Hospital, where she was given an injection for pain, a splint, and an ACE wrap. Claimant was then referred to and seen by her treating physician, Dr. Jason Leinen. Dr. Leinen noted that x-rays revealed no obvious fractures but referred Claimant for a CT scan. According to Dr. Leinen, the CT scan showed no evidence of acute bony fractures, dislocations, or other palpable deformities. He acknowledged that Claimant was still experiencing pain and stiffness in her wrist but opined, given that no fractures were identified, that Claimant should start doing more range of motion and grip exercises. Dr. Leinen also felt that Claimant was a bit guarded with her wrist and advised her to take off her brace at times of rest.

¶3 Claimant started seeing Dr. Thomas Lehman after she sought and the ALJ authorized a change of treating physician. Dr. Lehman ordered an EMG study. In his August 18, 2023 report, Dr. Lehman stated as follows:

Objective findings today continue to be benign. Nerve conduction study findings do not support a significant compression neuropathy. Patient continues to complain of discomfort without obvious objective signs of pathology.

At this time I have recommended that she gradually advance her activities as tolerated and return to activities without significant restriction. I believe she is at maximum medical improvement.

¶4 Claimant filed a Form-13 request for a prehearing conference requesting the appointment of an independent medical examiner. Following a hearing, the ALJ issued an order denying Claimant's request. Claimant appealed the ALJ's decision to the Commission en banc, which unanimously affirmed. Claimant now seeks further appellate review.

¶5 Claimant's injury occurred after the effective date of the Administrative Workers' Compensation Act, making it the applicable law. See Williams Companies, Inc. v. Dunkelgod, 2012 OK 96295 P.3d 1107

1. In violation of constitutional provisions;

2. In excess of the statutory authority or jurisdiction of the Commission;

3. Made on unlawful procedure;

4. Affected by other error of law;

5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;

6. Arbitrary or capricious;

7. Procured by fraud; or

8. Missing findings of fact on issues essential to the decision.

85A O.S. 2021 §78

¶6 Claimant contends the ALJ and the Commission erroneously construed 85A O.S. 2021 §112de novo. Fanning v. Brown, 2004 OK 785 P.3d 841Id. The primary goal of statutory interpretation is to determine and give effect to the Legislature's intent. Humphries v. Lewis, 2003 OK 1267 P.3d 333Yocum v. Greenbriar Nursing Home, 2005 OK 27130 P.3d 213Heath v. Guardian Interlock Network, Inc., 2016 OK 18369 P.3d 374

¶7 According to §112(C), "An independent medical examiner shall be selected from the list of independent medical examiners within ten (10) days when the employer or the employee petitions the Commission for the selection of an independent medical examiner." Id. Claimant argues the language is plain and unambiguous and demonstrates legislative intent for the ALJ to appoint an independent medical examiner anytime an employee requests one. As Employer notes, however, Claimant's position requires us to isolate language from one subsection of a ten-part statute, and "[w]e are not allowed to ignore the statutory context wherein the particular word or phase [at issue] appears." Stricklen v. Multiple Injury Trust Fund, 2024 OK 1542 P.3d 858

Although each word in a statute contributes to an understanding of an articulated legislative intent, courts have historically explained that legislative intent must be determined by the statute as a whole and not solely by an isolated word, phrase, or "particular expression" in the statute. . . . When interpreting statutes, we do not limit our consideration to a single word or phrase. Words used in a part of a statute must be interpreted in light of their context and understood in a sense that harmonizes with all other parts of the statute.

Id.,¶19, 542 P.3d at 867-68 (footnotes and internal quotation marks omitted).

¶8 In other words, whether §112(C) demonstrates the legislative intent suggested by Claimant cannot be determined without considering §112's other subsections. We find subsections (A)--(C) are particularly instructive here. Section 112(A)--(C) provides, in full, as follows:

A. The Workers' Compensation Commission shall create, maintain and review a list of licensed physicians who shall serve as independent medical examiners from a list of licensed physicians who have completed such course study as the Commission may require. An independent medical examiner must agree to examine an employee within forty-five (45) days of appointment. The Commission shall, to the best of its ability, include the most experienced and competent physicians in the specific fields of expertise utilized most often in the treatment of injured employees. The period of qualification shall be two (2) years. Physicians may be qualified for successive two-year periods. Physicians serving as independent medical examiners on the effective date of this act shall serve the remainder of their respective two-year qualification periods and may reapply for successive qualification periods. The Commission may remove an independent medical examiner from the list for cause.

B. An administrative law judge may appoint an independent medical examiner to assist in determining any issue before the Commission. In the event surgery is recommended by a treating physician, upon request of the employer, an independent medical examiner shall be appointed to determine the reasonableness and necessity of the recommended surgery. Such independent medical examiner shall be qualified to perform the type of surgery recommended.

C. An independent medical examiner shall be selected from the list of independent medical examiners within ten (10) days when the employer or the employee petitions the Commission for the selection of an independent medical examiner. The independent medical examiner shall be certified by a recognized specialty board in the area or areas appropriate to the condition under review.

85A O.S. §112

¶9 "May" denotes discretion, while "shall" denotes a command or mandate. BS&B Safety Systems, L.L.C. v. Edgerton, 2023 OK 89See 85A O.S. §112See id. If we construed §112(C) as also requiring mandatory appointment of an independent medical examiner "when the employer or the employee petitions the Commission for the selection" of one, subsection (B)'s provision for mandatory appointment of an independent medical examiner "[i]n the event surgery is recommended by a treating physician" and "upon request of the employer" would be rendered superfluous. We do not assume that the Legislature has done a vain and useless act. Hill v. Bd. of Educ., 1997 OK 111944 P.2d 930Id.

¶10 There are other notable linguistic differences in subsections (B) and (C) that indicate the Legislature did not intend to require an ALJ to appoint an independent medical examiner anytime an employer or employee requests one. First, the Legislature utilized two different verbs in §112(B) and §112(C). Subsection (B) authorizes an ALJ "to appoint" an independent medical examiner. See §112(B). Subsection (B) also requires that an independent medical examiner "be appointed" under certain circumstances. See id. Subsection (C), on the other hand, provides that an independent medical examiner "shall be selected from the list of independent medical examiners[.]" See §112(C) (emphasis added). In addition, subsection (B) specifically authorizes and/or directs the ALJ to act. Subsection (C) is written in passive voice and does not obligate any particular person to take any particular action. These differences demonstrate that the Legislature intended subsection (C) to be but one part of the larger process set forth by §112 for utilizing independent medical examiners, not a stand-alone provision mandating appointment of an independent medical examiner whenever a party asks for one.

¶11 Finally, we note the following:

[W]here the statutory language is ambiguous or uncertain, a construction is applied to avoid absurdities, remembering that the Legislature is not deemed to have created an absurdity or done a vain and useless act. Where inept or incorrect language has been utilized, the words are applied consistent with the real or obvious purpose of the legislative enactment.

World Pub. Co. v. White, 2001 OK 4832 P.3d 835

¶12 The real purpose of §112 is the one noted in §112(B): independent medical examiners are available to assist the ALJ in determining workers' compensation-related issues. Construing §112(C) as providing for additional requirements after the ALJ determines an appointment is warranted furthers that purpose. The ALJ may appoint an independent medical examiner to assist in determining any issue before the Commission. See §112(B). If, upon an employer or employee's request for an independent medical examiner, the ALJ determines an appointment is warranted, the ALJ shall select the independent medical examiner from the list of independent medical examiners referenced in §112(A) within ten days. See §112(C).

¶13 In her final proposition of error, Claimant contends that we may sua sponte order the appointment of an independent medical examiner. If Claimant intends to challenge the ALJ and the Commission's factual reasons for denying her request, we cannot agree. The ALJ noted that Claimant has been provided with reasonable and necessary medical treatment and has undergone extensive diagnostic testing, including an x-ray, a CT scan, and nerve conduction studies. Because all of the studies were within normal limits and Claimant has been released to full duty, the ALJ found that an independent medical examiner was not warranted. The record contains substantial evidence supporting the ALJ's conclusions. See Brown v. Claims Management Resources, Inc., 2017 OK 13391 P.3d 111

¶14 SUSTAINED.

DOWNING, P.J., concurs specially and BELL, C.J., dissents.

 

 

DOWNING, P.J., concurring specially:

¶1 I concur with the majority opinion sustaining the Commission's order. I write separately only to emphasize that to reach the majority's decision, I do not find it necessarily requires me to do much analysis, if any. The majority opinion correctly looks to the full text of 85A O.S.2021, § 112

FOOTNOTES

2018 OK 59427 P.3d 10522006 OK 29139 P.3d 8732018 OK 592003 OK 9681 P.3d 6522004 OK 84102 P.3d 6702000 OK 8616 P.3d 1120

 

 

BELL, C.J., dissenting:

¶1 I understand the logic behind the majority's opinion, but I read § 112(A)-(C) as separate actions. Subsection (B) is when an Administrative Law Judge is appointing IME. The language "may" is evidence that selection is a choice. Subsection (C) has language that allows either party to request an IME and the word "shall" is used. I believe this language used by the Legislature makes this selection mandatory for the Administrative Law Judge when a party petitions for an IME. I would send this case back and have the IME selected from the list as mentioned in Subsection (A). I respectfully dissent.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105