2010 OK CIV APP 75

Gerald A. AMUNDSEN, II, and Dawn Amundsen, Plaintiffs/Appellees,

v.

J. WRIGHT d/b/a J. Wright Homes, LLC, and John L. Wright, personally and individually, Defendants/Appellants,

and

Northwest Building Supply, Inc., Wallace Mechanical, LLC, Robert S. Wallace, personally and individually, and Brad Fleenor, personally and individually, Defendants.

No. 106,924.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 23, 2010.

Michael D. Denton, Jr., Denton Law Firm, Mustang, OK, for Plaintiffs/Appellees.

Jack S. Dawson, Joseph H. Rogers, III, Carri A. Remillard, Miller Dollarhide, P.C., Oklahoma City, OK, for Defendants/Appellants.

DEBORAH B. BARNES, Judge.

¶ 1 Defendants/Appellants J. Wright d/b/a J. Wright Homes, LLC, and John L. Wright, personally and individually, (Builders) appeal from the Journal Entry of Judgment filed on January 16, 2009,[1] in which the trial court overruled their Motion to Compel Arbitration. The issues on appeal arise out of the parties' agreement in their Residential Construction Agreement to submit any and all disputes to binding arbitration pursuant to specific procedures that turned out not to exist. Because the parties only agreed to arbitrate pursuant to specific, but non-existent, procedures, we find that, under the circumstances of this case, arbitration cannot be compelled. Therefore, we find the trial court did not err in overruling the Motion to Compel Arbitration and we affirm the trial court's January 16, 2009, Journal Entry of Judgment. We remand this case to the trial court for further proceedings.

## FACTS

¶ 2 A dispute arose between the parties regarding the construction of a home in Canadian County, Oklahoma. Plaintiffs/Appellees Gerald A. Amundsen, II, and Dawn Amundsen (Buyers) filed a Petition against Builders and other defendants in the District Court of Canadian County. Builders responded by filing a Motion to Compel Arbitration. Builders seek to compel arbitration with Buyers based upon certain language found in Clause 10 of the parties' Residential Construction Agreement (the Agreement).[2] The pertinent language in the Agreement states:

1. Builders did not file their Petition in Error until March 25, 2009, more than 30 days after the trial court's Journal Entry of Judgment. *See* 12 O.S. Supp.2002 § 990A ("[a]n appeal to the Supreme Court of Oklahoma, if taken, must be commenced by filing a petition in error with the Clerk of the Supreme Court of Oklahoma within thirty (30) days from the date a judgment, decree, or appealable order ... is filed with the clerk of the trial court"). However, Builders assert in the Petition in Error that Plaintiffs/Appellees, Gerald A. Amundsen, II, and Dawn Amundsen, drafted the Journal Entry of Judgment but did not serve Builders with a filed-stamped copy until February 24, 2009. We re-view this appeal as timely pursuant to the March 27, 2009, Order of the Oklahoma Supreme Court, which states:

Based upon the representation in the petition in error that the [Builders] did not have notice of the filing of the January 16, 2009 order until February 24, 2009, this appeal appears to be timely commenced and shall proceed. 12 O.S. § 990A.

2. The Agreement was signed by Builders (i.e., by J. Wright Homes, LLC's "Member/Manager," John L. Wright) and Buyers and is dated March 28, 2005. Record (R.), pp. 11–18.

10. ***Arbitration of Disputes.*** Any and all claims, disputes and controversies of every kind and nature between the Parties to this Agreement ... shall be submitted to binding arbitration pursuant to the procedures established and maintained by the Central Oklahoma HomeBuilder's (sic) Association. Subject to the foregoing obligations to arbitrate all disputes between the parties hereto, the Parties may elect to proceed with other alternative dispute resolution means, including conciliation and/or mediation. The Parties hereby stipulate and agree that the provisions of this section shall be a complete defense to any suit, action or proceeding instituted in any ... state or local court ... with respect to any controversy, dispute or claim arbitrable as set forth herein.[3]

▪ ¶ 3 However, "the Central Oklahoma HomeBuilder's (sic) Association" does not have, and has never had, procedures established for arbitration. In other words, "the arbitration procedures referenced in the contract do not exist."[4] Based on the reasons set forth below,[5] we affirm the trial court's Journal Entry of Judgment overruling Builders' Motion to Compel Arbitration, and remand for further proceedings.

## STANDARD OF REVIEW

▪ ¶ 4 "We review an order granting or denying a motion to compel arbitration *de novo*,[6] the same standard of review employed by the trial court." *Thompson v. Bar–S Foods Co.*, 2007 OK 75, ¶ 9, 174 P.3d 567, 572 (citations omitted). "Arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (citation omitted).

▪ ¶ 5 "The interpretation of an arbitration agreement is governed by general state-law principles of contract interpretation." *Id.* at ¶ 18 (internal quotations and citation omitted). "The purpose of construing an instrument is to divine from its text the intent of the parties. Unless there is an ambiguity, that intent must be gathered solely from the four corners of the instrument." *Cleary Petroleum Corp. v. Harrison*, 1980 OK 188, ¶ 8, 621 P.2d 528, 532 (footnote omitted).

## ANALYSIS

### I. Removal of Certain Contract Language

▪ ¶ 6 Builders argue that the procedures for arbitration set forth in Clause 10 of the Agreement are "secondary and not central."[7] They argue that, therefore, the language—"pursuant to the procedures established and maintained by the Central Oklahoma HomeBuilder's (sic) Association"—should be removed from the Agreement in order to express the parties' central intent: to arbitrate "[a]ny and all claims, disputes and controversies...." The arbitration procedures found in "the Uniform Arbitration Act, 12 O.S. § 1851, *et seq.*" should then be applied.[8]

▪ ¶ 7 In support, Builders cite to 15 O.S.2001 §§ 166, 168, and 169, which state, respectively, that "[p]articular clauses of a contract are subordinate to its general in-

---

3. R., p. 14.

4. R., p. 41; Builders' Brief-in-chief, p. 5. The trial court found in its Journal Entry of Judgment "[t]hat the Central Oklahoma Home Builders' Association does not have any established arbitration procedures," and Builders do not contest this finding on appeal. Rather, this fact is stipulated by the parties in their appellate briefs.

5. "An appellate court has a common-law duty to affirm a trial judge's decision if it can be supported by any applicable legal theory." *Nichols v. Nichols*, 2009 OK 43, ¶ 10, 222 P.3d 1049, 1054 (footnote omitted). "If legally correct, a trial court's ruling will not be reversed because of its faulty reasoning, erroneous finding of fact or its consideration of an immaterial issue." *Id.* at n. 14 (citations omitted).

6. By *de novo* review, we mean this Court claims for itself plenary, independent, and non-deferential authority to reexamine a trial court's legal rulings. *Kluver v. Weatherford Hospital Authority*, 1993 OK 85, 859 P.2d 1081.

7. Builders' Brief-in-chief, p. 5. In Builders' Reply in the court below, they argued that "[t]he method of the arbitration is simply secondary and of little concern." R., p. 33.

8. Builders' Brief-in-chief, p. 5.

tent," and "[r]epugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause, subordinate to the general intent and purposes of the whole contract," and "[w]ords in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected." However, as stated above, the language Builders would have us strike, and the language Builders argue represents the central intent of the parties to arbitrate, are not separate and contradictory. Rather, they are contained in the same, unambiguous sentence that sets forth one clear and explicit intent: that "[a]ny and all claims, disputes and controversies of every kind and nature between the Parties to this Agreement ... shall be submitted to binding arbitration pursuant to the procedures established and maintained by the Central Oklahoma Home-Builder's (sic) Association." We agree with Builders that when interpreting a contract, this Court must give effect to the mutual intent of the parties. 15 O.S.2001 § 152. However, "[t]he purpose of construing an instrument is to divine from its text the intent of the parties. *Unless there is an ambiguity,* that intent must be gathered solely from the four corners of the instrument." *Cleary Petroleum Corp. v. Harrison,* 1980 OK 188, ¶ 8, 621 P.2d 528, 532 (emphasis added, footnote omitted). We reject Builders' argument that certain language should be removed from this unambiguous sentence to reconcile a "repugnancy," or to fix an inconsistency. We also reject Builders' argument that certain language should be removed from this sentence because it is "secondary and not central"—especially where, as here, the removal of that language would completely change the meaning of the sentence to incorporate any and all arbitration procedures rather than one specific set of procedures. Although the arbitration procedures referred to turned out not to exist, the language is clear and unambiguous, and, from the four corners of the Agreement, it does not contain an inconsistency. "The fairness or unfairness, *folly or wisdom,* or inequality of contracts are questions exclusively within the rights of the parties to adjust at the time the contract is made." *Barnes v.*

*Helfenbein,* 1976 OK 33, ¶ 26, 548 P.2d 1014, 1021 (emphasis added).

¶ 8 Builders also cite to 12 O.S. Supp. 2005 § 1862 of the Oklahoma Uniform Arbitration Act (OUAA), which states, in part, that "[i]f the parties to an agreement to arbitrate agree on a method for appointing an arbitrator, that method must be followed, unless the method fails. If ... the agreed method fails ... the court, on motion of a party to the arbitration proceeding, shall appoint the arbitrator." Builders argue, pursuant to this statute, that the trial court should appoint an arbitrator and that arbitration should then proceed pursuant to the OUAA because the arbitration procedures agreed upon by the parties have failed.

¶ 9 We first note that Clause 15 of the Agreement provides that it shall "be governed, construed and interpreted in accordance with the laws of the State of Oklahoma...." Therefore, the OUAA governs the Agreement. *Sooner Builders & Investments, Inc. v. Nolan Hatcher Construction Services,* 2007 OK 50, ¶ 22, 164 P.3d 1063, 1070. "The primary purpose of ... the OUAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Coulter v. First American Resources, L.L.C.,* 2009 OK 53, ¶ 8, 214 P.3d 807, 809. It is the court's "authority to prevent arbitration on terms other than those on which the parties agreed." *Id.* at ¶ 7. "In cases of uncertainty ... the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." 15 O.S.2001 § 170. Builders drafted the Agreement (entitled "Residential Construction Agreement"), and Builders, as the drafters, are presumed to have caused the uncertainty to exist. Therefore, we interpret the language of the Agreement most strongly against Builders.

¶ 10 Title 12 O.S. Supp.2005 § 1862 mandates that the court appoint an arbitrator where the agreed "method for appointing an arbitrator" has failed. Here, however, the parties have agreed not simply on the method for appointing an arbitrator, but they have agreed upon the specific procedures to be followed. Under these circumstances, if

the court were to appoint an arbitrator and to order arbitration pursuant to the procedures set forth in the OUAA, not only would the parties' intent regarding their choice of arbitrator be violated, but the parties' intent regarding the specific procedures to be followed would also be violated. Because the OUAA does not grant the courts the power to violate the intent of the parties regarding their specific choice of arbitration procedures, we reject Builders' argument that § 1862 controls the disposition of this matter. Pursuant to Oklahoma law, arbitration may be initiated only under the procedures designated by the parties in the Agreement.

¶ 11 Builders argue, finally, that there was a mutual mistake and that the trial court should have resolved this mutual mistake by striking the arbitration procedures chosen by the parties rather than by striking the entire arbitration clause. Mutual mistake is pertinent to the remedy of reformation. Reformation is a remedy to "conform a written contract to the parties' antecedent agreement" when the written contract "differs from the antecedent expressions on which the parties based their agreement." *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 29 n. 22, 160 P.3d 936, 947 n. 22. Builders do not cite to 15 O.S.2001 § 156 or to any case law that supports an argument for reformation of the Agreement based on a mutual mistake of the parties.[9] Nevertheless, to obtain reformation, Builders would have to show, by clear and convincing evidence, a mutual mistake that resulted in an instrument that does not reflect what either party intended. *Thompson v. Estate of Coffield*, 1995 OK 16, ¶ 10, 894 P.2d 1065, 1067–68.[10] Not only do Build-

ers fail to set forth any law to support such an argument, they fail to assert that the language—"pursuant to the procedures established and maintained by the Central Oklahoma HomeBuilder's (sic) Association"—was set forth in the Agreement as a result of a mutual mistake. Instead, Builders state that the procedures set forth in the Agreement were "the parties' agreed method. . . ."[11] The only "mistake" was "that neither party bothered to actually contact the association" to discover whether it had arbitration procedures.[12] Because the Agreement does not differ from the antecedent expressions on which the parties based their agreement, reformation is not available. Once more, "[t]he fairness or unfairness, folly or wisdom, or inequality of contracts are questions exclusively within the rights of the parties to adjust at the time the contract is made." *Barnes v. Helfenbein*, 1976 OK 33, ¶ 26, 548 P.2d 1014, 1021. Although "[r]eformation corrects a mistake between the written document and the actual intent of the contracting parties," it will not "rewrite" a contract simply because it has become less favorable to one party. *Oklahoma Oncology & Hematology P.C.*, at n. 22, 160 P.3d at n. 22.

¶ 12 The intent of the parties is clear and unambiguous. We reach this conclusion "without narrowly concentrating upon some clause or language taken out of context." *Mercury Investment Co. v. F.W. Woolworth Co.*, 1985 OK 38, ¶ 9, 706 P.2d 523, 529. The parties agreed to arbitrate only pursuant to specific procedures established and maintained by the "Central Oklahoma HomeBuilders (sic) Association." The fact that those procedures did not exist pre-

---

9. On appeal, a presumption is indulged that the ruling of the trial court was correct. *John Deere Plow Co. v. Owens*, 1943 OK 284, ¶ 25, 194 Okla. 96, 147 P.2d 149, 154. "The general rule is that this court does not decide a cause on appeal on a theory not presented to the court below nor on one that is not argued in the briefs in this court." *Id.* at ¶ 19. The reviewing court will not search the record for some error on which to reverse the trial court. *Gaines Brothers Co. v. Phillips*, 1944 OK 254, ¶ 11, 194 Okla. 374, 151 P.2d 933, 935. "[T]he rule [is] that even where plausible argument is submitted in the brief[,] if unsupported by citation of authorities it will not overcome the presumption indulged in favor of the

judgment." *Id.* "Argument without supporting authority will not be considered." Rule 1.11(k)(1), Oklahoma Supreme Court Rules, 12 O.S.2001, ch. 15, app. 1.

10. Reformation may also be obtained by showing mistake by one party and inequitable conduct on the part of the other, or by showing fraud, but these possibilities are irrelevant to this case.

11. Builders' Brief-in-chief, p. 6.

12. *Id.* at p. 5.

vented the parties from contracting with respect to that issue. *Thompson v. Bar–S Foods Co.*, 2007 OK 75, ¶ 33, 174 P.3d 567, 577. "The law will not make a better contract than the parties themselves have seen fit to enter into, or alter it for the benefit of one party to the detriment of another." *King–Stevenson Gas & Oil Co. v. Texam Oil Corp.*, 1970 OK 45, ¶ 25, 466 P.2d 950, 954 (citation omitted). "The courts will enforce arbitration agreements according to the terms of the parties' contract, as '[a]rbitration is a matter of consent, not coercion.'" *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 22, 160 P.3d 936, 944.

## II. The Arbitration Procedures Referenced in the Agreement Do Not Exist

¶ 13 In determining whether arbitration may be nevertheless compelled when the arbitration procedures referenced in the contract do not exist, we are guided by the rationale employed by the Oklahoma Supreme Court in *The Pentagon Academy, Inc. v. Independent School District No. 1 of Tulsa County, Oklahoma*, 2003 OK 98, 82 P.3d 587. In *Pentagon*, an unsuccessful charter school applicant sought to compel a school district to submit to binding arbitration on its application. At the time, title 70, § 3–134(F) of the Charter Schools Act provided that when an application to establish a charter school is rejected by a board of education, the unsuccessful applicant may proceed to binding arbitration as provided in the Dispute Resolution Act and the rules promulgated pursuant thereto. However, the Dispute Resolution Act, which § 3–134(F) incorporated by reference, did not authorize binding arbitration, nor had any rules for arbitration been promulgated pursuant thereto. The Court stated that, with one insignificant exception, the provisions of the Dispute Resolution Act made no mention of arbitration, and it did not provide for arbitration as a means

of resolving disputes, nor did it establish rules and procedures for its implementation. The Court found that "[t]he silence of the Dispute Resolution Act on the subject of provisions governing binding arbitration leaves no room for this Court to add language and change the meaning of the statutes.... Relying on its provisions as authority for compulsory binding arbitration is, as was determined by the trial court, legally impossible." *Id.* at ¶ 18.

¶ 14 Although we are confronted with an issue of contract interpretation, and the Court in *Pentagon* was confronted with an issue of statutory interpretation, we find its logic to be persuasive. As in *Pentagon*, the procedures for arbitration referenced in the Agreement do not exist. The Agreement clearly states in one, unambiguous sentence that "[a]ny and all claims, disputes and controversies of every kind and nature between the Parties to this Agreement ... shall be submitted to binding arbitration *pursuant to the procedures established and maintained by the Central Oklahoma HomeBuilder's (sic) Association.*" Because there are no such procedures, we find that reliance on this provision of the Agreement as authority for compulsory arbitration is legally impossible.

¶ 15 The parties' agreement to arbitrate contains one object: that "[a]ny and all claims, disputes and controversies of every kind and nature between the Parties to this Agreement ... shall be submitted to binding arbitration pursuant to the procedures established and maintained by the Central Oklahoma HomeBuilder's (sic) Association." Because the procedures chosen by the parties do not exist and never existed, performance pursuant to the arbitration clause in the Agreement is impossible.[13] However, this impossibility does not dissolve the remainder of the Agreement. The Restatement (First) of Contracts, § 463 (1932), states as follows:

13. "It is now well settled that where the existence of a specific thing is necessary for the performance of a contract, the accidental destruction or nonexistence of that thing excuses the promisor, unless he has assumed by his contract the risk of its existence." *Kansas, Oklahoma & Gulf Railway Co. v. Grand Lake Grain Co.*, 1967 OK 170, ¶ 19, 434 P.2d 153, 158 (quoting 6 Williston, Contracts (rev. ed.) § 1946). "If the existence of a specific thing is necessary for the performance of a duty, its failure to come into existence ... as makes performance impracticable is an event the non-occurrence of which was a basic assumption on which the contract was made." Restatement (Second) of Contracts, § 263 (1981).

Where impossibility of performing part of the performance promised by a party to a bargain is of such character that if it related to the entire performance it would prevent the imposition of a duty or would discharge a duty that had arisen, and the remainder of the performance is not made materially more difficult or disadvantageous than it would have been if there had been no impossibility, the existence of duty is affected only as to that part; and if performance of the whole contract is possible with only an unsubstantial variation, the promisor is under a duty to render performance with that variation.

"[I]mpossibility of performing part of a promise rarely discharges a promisor beyond the extent of the impossibility." Restatement (First) of Contracts, § 463, comment b (1932). *See also* 84 A.L.R.2d 12, § 14(b). This rule is mirrored in the Restatement (Second) of Contracts, § 270 (1981), which states as follows:

Where only part of an obligor's performance is impracticable, his duty to render the remaining part is unaffected if

(a) it is still practicable for him to render performance that is substantial, taking account of any reasonable substitute performance that he is under a duty to render. . . .

¶ 16 Although performance pursuant to the arbitration clause in the Agreement is impossible because the procedures chosen by the parties do not exist, we find that this does not make Builders' performance pursuant to the Agreement materially more difficult or disadvantageous than it would have been if there had been no such impossibility. We find that it is still practicable for Builders to render performance pursuant to the Agreement that is substantial, despite the impossibility of arbitrating disputes.

¶ 17 As in *Pentagon,* Builders' Motion to Compel must be overruled because it is legally impossible to arbitrate pursuant to nonexistent procedures, and ordering arbitration pursuant to some other set of procedures would violate the unambiguous intent of the parties as expressed in the Agreement. The remainder of the Agreement is not dissolved due to this impossibility.

## CONCLUSION

¶ 18 Based on our review of the record and applicable law, we affirm the trial court's Journal Entry of Judgment overruling Builders' Motion to Compel Arbitration and remand this case to the trial court for further proceedings.

¶ 19 **AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, C.J., and FISCHER, P.J., concur.