WATTS v. BELMAR NORTH HOA
2023 OK CIV APP 22
531 P.3d 669
Case Number: 120710
Decided: 05/08/2023
Mandate Issued: 06/01/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2023 OK CIV APP 22, 531 P.3d 669

 

DUSTIN WAYNE WATTS, Plaintiff/Appellant,
v.
BELMAR NORTH HOA, ANDREW ARNOLD, ROB GRIFFIN, HEATHER LAWSON and IRIS COPELAND, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE LORI M. WALKLEY, TRIAL JUDGE

AFFIRMED

Timothy D. Beets, MIDTOWN ATTORNEYS, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant

Greg D. Givens, Sheila R. Benson, Stephanie L. Khoury, GIVENS LAW FIRM, Oklahoma City, Oklahoma, for Defendants/Appellees

DEBORAH B. BARNES, VICE-CHIEF JUDGE:

¶1 Dustin Wayne Watts appeals from an order compelling arbitration. Based on our review, we affirm.

BACKGROUND

¶2 Mr. Watts filed a petition in October 2021 asserting various theories of recovery against Defendants. Defendants are composed of the Belmar North HOA

¶3 In response, Defendants filed a "Special Entry of Appearance and Motion to Dismiss or in the Alternative Motion to Compel Arbitration and Stay Proceedings." Pertinent to this appeal, Defendants assert "[Mr. Watts'] claims are governed by an agreement to submit to mediation and/or binding arbitration." Defendants assert Belmar North HOA "is a nonprofit incorporated [HOA] operating pursuant to Declaration of Covenants, Conditions and Restrictions (hereinafter "CCR") for the Belmar North [housing tract]." They assert: "[t]he [CCR] requires mandatory membership for owners of lots contained within the neighborhood"; "[t]he dispute between the parties is subject to the terms of the CCR"; and the CCR contains a binding arbitration clause. Pursuant to this clause, Defendants moved to compel arbitration.

¶4 Following a hearing, the district court sustained Defendants' Motion to Compel Arbitration. Mr. Watts appeals.

STANDARD OF REVIEW

¶5 "A determination of the existence of a valid enforceable agreement to arbitrate is a question of law to be reviewed by a de novo standard." Signature Leasing, LLC v. Buyer's Grp., LLC, 2020 OK 50466 P.3d 544de novo review [is] proper." Signature Leasing, ¶ 2, 466 P.3d at 545 (citation omitted). See also Williams v. TAMKO Bldg. Prod., Inc., 2019 OK 61451 P.3d 146de novo." (citations omitted)); cf. Whitehorse v. Johnson, 2007 OK 11156 P.3d 41de novo." Signature Leasing, ¶ 2, 466 P.3d at 545 (citations omitted).

ANALYSIS

¶6 The Oklahoma Supreme Court has explained as follows:

Our courts recognize the strong public policy favoring arbitration of disputes. Arbitration agreements are statutorily allowed by Oklahoma's amended version of the Uniform Arbitration Act (OUAA), 12 O.S. 2011 [now 2021] §§ 1851-1881. Parties' agreements to bind themselves to mandatory arbitration are generally looked upon with favor as a shortcut to substantial justice with a minimum of court interference.

Over the years, we have recognized that arbitration agreements are designed to preclude court intervention into the merits of disputes when arbitration has been provided for contractually and any doubts concerning the arbitrability of a particular dispute should be resolved in favor of coverage.

Howell's Well Serv., Inc. v. Focus Grp. Advisors, LLC, 2021 OK 25507 P.3d 623

¶7 As the parties agree, the provisions of the OUAA apply to this dispute. However, both the OUAA and the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2018), require that courts "enforce arbitration agreements according to the terms of the parties' contract, as arbitration is a matter of consent, not coercion. The contract must be construed to carry out the intent of the parties at the time the contract was made." Coulter v. First Am. Res., L.L.C., 2009 OK 53214 P.3d 807Id. (citations omitted).

¶8 Accordingly, "[a]n arbitration agreement's existence is governed by state law principles." Williams, 2019 OK 61See also id. (Arbitration agreements are "as enforceable as other contracts, but not more so." (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967)); 12 O.S. 2021 § 1857Magel v. Nuveen, 2023 OK CIV APP 13

¶9 The parties agree they are bound by the terms of the CCRs, and that the CCRs contain an arbitration provision that reads as follows:

Section 2.15 Dispute Resolution Including Mandatory Arbitration.

NON-MONETARY DISPUTES MUST BE RESOLVED THROUGH A MEDIATION PROCESS WHICH INCLUDES BINDING AND MANDATORY ARBITRATION. THIS PROCESS DOES NOT APPLY TO THE ASSOCIATION'S RIGHT AND RESPONSIBILITY TO COLLECT AMOUNTS OWED TO IT UNDER THESE COVENANTS AND THE BYLAWS OF THE ASSOCIATION.

Any Owner, by acceptance of a deed to a Lot in the Subject Property, does hereby agree to mandatory dispute resolution including mandatory arbitration of any dispute between that Owner and the Association or any other Owner the subject of which is the violation or non-compliance with the terms of these Covenants, any amendments or additions thereto and Bylaws of the Association including Rules and Regulations adopted by the Board of Directors. The terms and procedures to be followed are set forth in the Bylaws of the Association. Mandatory dispute resolution does not apply to the collection of the dues, assessments, fines and any interest or costs associated with the collection of these amounts.

¶10 Although this provision states "[t]he terms and procedures to be followed are set forth in the Bylaws of the Association," the parties agree the Bylaws do not contain any such terms or procedures.

¶11 Mr. Watts does not argue that his claims against Defendants - i.e., that they caused him damage "by their failing to fulfill their duties as an HOA and by deliberately retaliating against [him]" - do not fall within the agreement to submit "to mandatory dispute resolution including mandatory arbitration . . . ." Rather, based on the absence of any terms or procedures for arbitration (or dispute resolution) in the Bylaws, Mr. Watts argues the CCRs do not contain "a complete or valid arbitration agreement."15 O.S. 2021 § 170

¶12 In support of his arguments, Mr. Watts cites to Amundsen v. Wright, 2010 OK CIV APP 75240 P.3d 16Amundsen, ¶ 2, 240 P.3d at 19. However, because no such procedures were ever established, the Court concluded it would be "impossible to arbitrate pursuant to nonexistent procedures," and concluded that "ordering arbitration pursuant to some other set of procedures would violate the unambiguous intent of the parties as expressed in the Agreement." Amundsen, ¶ 17, 240 P.3d at 23.

¶13 The circumstances presented in Amundsen are distinguishable in important ways. As pointed out by Defendants, the arbitration provision in Amundsen requiring arbitration pursuant to "procedures established and maintained by the Central Oklahoma HomeBuilder's Association" was all contained within one sentence, indicating the integral nature of those procedures to the agreement. In the present case, by contrast, the language stating that "[t]he terms and procedures to be followed are set forth in the Bylaws of the Association" is contained within a sentence that is separate from the language stating the parties "agree to mandatory dispute resolution including mandatory arbitration[.]" In addition, the language referring to terms and procedures is also separate, and physically divided, from additional language agreeing to arbitration: i.e., that contained in the emphasized portion of the agreement directly above that paragraph, which states that "NON-MONETARY DISPUTES MUST BE RESOLVED THROUGH A MEDIATION PROCESS WHICH INCLUDES BINDING AND MANDATORY ARBITRATION."

¶14 Moreover, the CCRs in the present case contain a severability provision:

Section 5.1 Severance. If any of the provisions of this Declaration or any paragraph, sentence, clause, phrase or word, or the application thereof in any circumstance be invalidated, such invalidity shall not affect the validity of the remainder of this Declaration, and the application of any such provisions, paragraph, sentence, clause, phrase or word in any other circumstances shall not be affected thereby.

Pursuant to this provision, the invalidity of the sentence referring to (nonexistent) terms and procedures in the Bylaws "shall not affect the validity of the remainder[.]" See Okla. Oncology & Hematology P.C., 2007 OK 12

¶15 Finally, the OUAA contemplates scenarios in which the parties either "have not agreed on a method" for appointing an arbitrator, or "the agreed method fails[.]" 12 O.S. 2021 § 1862Id. As explained by a separate division of this Court:

Courts which have addressed this question have found that where the arbitration clause's selection of an arbitrator is "integral" to the agreement, the failure of the chosen arbitration forum is fatal to the arbitration clause itself, but if the choice of arbitrator is "merely an ancillary logistical matter" then alternate arbitrator provisions like Section 5 of the FAA or § 1862 of the OUAA will apply.

Bennett v. Eskridge Auto Grp., 2014 OK CIV APP 54326 P.3d 544cert. denied (citing Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217 (11th Cir. 2000)). See also Rivera v. Am. Gen. Fin. Servs., Inc., 259 P.3d 803, 812 (N.M. 2011) ("The 'integral' or 'ancillary logistical concern' test . . . is consistent with . . . general principles of contract law in requiring courts to 'give effect to the intent of the parties.'" (citations omitted)).

¶16 Whereas in Amundsen, the "procedures established and maintained by the Central Oklahoma HomeBuilder's Association" were clearly deemed by the Court to be integral to the agreement, here, the "terms and procedures to be followed" as "set forth in the Bylaws" cannot be viewed as more than ancillary. Indeed, as either party might easily have discovered, no such terms or procedures were in existence. Relatedly, the CCRs contain no express designation of a single arbitration method or forum. Moreover, the CCRs contain more than one clear agreement to arbitrate as well as a severability clause - as above stated, the language regarding the "terms and procedures" is both separate and severable. Because the circumstances thus indicate the terms and procedures language is not integral to the agreement to arbitrate, the alternate arbitrator provision found in the OUAA applies.

¶17 Because the CCRs contain an agreement to submit to arbitration which Mr. Watts does not assert fails to encompass the present controversy, and because no ground exists at law or in equity for the revocation of the agreement to submit to arbitration, the agreement "is valid, enforceable, and irrevocable[.]" 12 O.S. 2021 § 1857An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." (emphasis added)).

CONCLUSION

¶18 Mr. Watts' arguments are unpersuasive that the arbitration provision is incapable of being performed as written and that the entire arbitration agreement is invalidated by the absence of arbitration terms and procedures in the Bylaws. We affirm the district court's order compelling arbitration.

¶19 AFFIRMED.

WISEMAN, P.J., and HIXON, J., concur.

FOOTNOTES

12 O.S. § 953

Williams, 2019 OK 61Id. As set forth in the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (amended in 2022 without alteration to the quoted language).

Okla. Oncology & Hematology P.C. v. US Oncology, Inc., 2007 OK 12160 P.3d 936