SIGNATURE LEASING LLC v. BUYER'S GROUP LLC



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:SIGNATURE LEASING LLC v. BUYER'S GROUP LLC

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 SIGNATURE LEASING LLC v. BUYER'S GROUP LLC
2020 OK 50
Case Number: 115100
Decided: 06/09/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 50, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



SIGNATURE LEASING, LLC, an Oklahoma limited liability company, Plaintiff/Appellant,
v.
BUYER'S GROUP, LLC, an Oklahoma limited liability company; BUYER'S GROUP OPERATING COMPANY, INC., an Oklahoma corporation; and WILLIAMS and WILLIAMS MARKETING SERVICES, INC., an Oklahoma corporation, Defendants/Appellees.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION II

¶0 Plaintiff requested a declaratory judgment regarding a contract containing an arbitration clause which Plaintiff alleged that Defendants had fraudulently induced Plaintiff to sign. Defendants filed motions to dismiss and motions to compel arbitration which the district court granted. The Court of Civil Appeals reversed and remanded to the district court. We previously granted Defendants' petition for certiorari.

COURT OF CIVIL APPEALS OPINION VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.

Ryan A. Ray, Norman Wohlgemuth Chandler Jeter Barnett & Ray, P.C., Tulsa, OK, for Plaintiff/Appellant, Signature Leasing, LLC.
R. Tom Hillis and R. Kyle Alderson, Titus Hillis Reynolds Love Dickman & McCalmon, Tulsa, OK, for Defendants/Appellees, Buyer's Group, L.L.C. and Buyer's Group Operating Company, Inc.
Fred C. Cornish, Tulsa, OK, for Defendant/Appellee, Williams & Williams Marketing Services, Inc.
OPINION


DARBY, V.C.J., 
¶1 The underlying question before us is whether the district court or the arbitrator determines challenges of fraudulent inducement to the entirety of a contract which contains an arbitration clause under the Oklahoma Uniform Arbitration Act (OUAA), 12 O.S.2011, §§ 1851-1881. We answer that the arbitrator makes that determination and affirm the judgment of the district court compelling the matter to arbitration.
I. STANDARD OF REVIEW
¶2 A determination of the existence of a valid enforceable agreement to arbitrate is a question of law to be reviewed by a de novo standard. Okla. Oncology & Hematology P.C. v. US Oncology, Inc., 2007 OK 12, ¶ 19, 160 P.3d 936, 944; Rogers v. Dell Computer Corp., 2005 OK 51, ¶ 18, 138 P.3d 826, 831. An application to compel arbitration may present mixed questions of law and fact regarding the existence of an arbitration agreement. Bruner v. Timberlane Manor Limited Partnership, 2006 OK 90, ¶ 8, 155 P.3d 16, 20. Signature Leasing, LLC (Purchaser), did not dispute the evidence, relative to the issue now before the Court, presented by Buyer's Group, LLC, Buyer's Group Operating Company, Inc., (together "Seller"), or Williams & Williams Marketing Services, Inc. (Broker), but rather disputed the conclusion to be drawn from such evidence, making de novo review proper. A legal question involving statutory interpretation is also reviewed de novo. Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶ 8, 33 P.3d 302, 305; Arrow Tool & Gauge v. Mead, 2000 OK 86, ¶ 6, 16 P.3d 1120, 1123. Further, when reviewing a district court's dismissal of an action, we examine the issues de novo. Rogers v. Quiktrip Corp., 2010 OK 3, ¶ 4, 230 P.3d 853, 855-56.
II. BACKGROUND
¶3 On June 5, 2012, Broker conducted an auction of the Indian Springs Country Club (Indian Springs) on behalf of Seller. Purchaser was the high bidder on the property. Immediately after the auction, Purchaser's members were presented with the "Purchase and Sale Agreement" (Agreement) which contained a provision that any controversy or claim arising out of or relating to the Agreement would be settled by binding arbitration. Purchaser alleged that its members were coerced by Broker into signing the Agreement immediately, without the opportunity for requested legal review. Purchaser alleged that following the auction, it learned of significant problems with the golf course and extensive title issues regarding the real property. Purchaser alleged it then contacted a local title company who informed Purchaser that there were too many title problems to allow transfer of marketable title to the Indian Springs property.
¶4 On June 8, 2012, Purchaser sent a letter to Broker rescinding the Agreement. On June 12, 2012, Broker, by means of a letter to Purchaser and one of Purchaser's members, formally rejected Purchaser's rescission and claimed that neither the terms of the auction nor the Agreement itself allowed for rescission. Broker further alleged that Purchaser had ample time prior to the auction to review the Agreement, that Purchaser decided to forego due diligence at its own fault and peril, and that Purchaser had no bona fide basis for breaching the Agreement. Petition Ex. C, Signature Leasing, LLC v. Buyer's Group, LLC, No. CJ-2013-4183 (Tulsa Cty. Dist. Ct.). Broker also alleged that the member personally had registered for the auction and had agreed to be bound to the terms and conditions of both the auction and the Agreement in his individual capacity.
III. PROCEDURAL HISTORY
¶5 On September 6, 2013, Purchaser filed a petition in Tulsa County District Court against Seller and Broker (together "Defendants"). Purchaser requested a declaratory judgment that Purchaser properly rescinded the contract, the contract is unenforceable, and that Purchaser's members do not bear personal liability regarding the Agreement. Purchaser alleged that Defendants obtained their signature on the Agreement through duress, menace, fraud, or undue influence. Further, Purchaser claimed fraudulent and negligent misrepresentation by the Defendants, and violation of title 76, section 2 of the Oklahoma statutes.[1]
¶6 On February 13, 2014, Seller filed a motion to compel arbitration, pursuant to title 12, sections 1856 and 1858, and a motion to dismiss, pursuant to title 12, section 2012(b)(6) for failure to state a claim.[2] Seller argued that the parties entered into a valid and enforceable contract and Seller has a substantive and mandatory right to arbitrate claims. Broker filed a motion to dismiss pursuant to section 2012(b)(6) on February 18, 2014 and a motion to compel arbitration on February 19, 2014. Broker adopted and incorporated Seller's motion to compel arbitration. Purchaser responded that arbitration cannot be compelled when the underlying contract is the subject of a claim of fraudulent misrepresentation.[3]
¶7 On June 6, 2016, the district court granted Defendants' motions to dismiss and motions to compel arbitration. The district court found:
1. Extant Oklahoma law on resolving challenges to arbitration agreements conflicts with the Federal Arbitration Act (hereinafter "FAA").
2. Federal law adheres to the "separability doctrine" under the FAA. See Nitro-Lift Technologies, LLC v. Howard, [568] U.S. [17, 21], 133 S.Ct. 500, 503, 184 L.Ed.2d 328 (2012)(". . . and when the parties commit to arbitrate contractual disputes, it is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved by the arbitrator in the first instance, not by a state or federal court.")(Quotations and citations omitted).
3. Plaintiff's allegations of fraud are to the contract as a whole, not to the arbitration clause itself. The FAA displaces Oklahoma law in this case, and mandates that the validity of the contract must be determined by the arbitrator.
4. The arbitration clause in this contract is valid on its face.
5. The matter is compelled to arbitration as (1) the FAA applies, and (2) the FAA displaces Oklahoma's rejection of the separability doctrine.
Ord. on Defs.' Mots. to Dismiss and Mots. to Compel Arb. 1-2, Signature Leasing, LLC v. Buyer's Group, LLC, No. CJ-2013-4183 (Tulsa Cty. Dist. Ct. June 6, 2016).
¶8 On June 20, 2016, Purchaser filed a petition in error. Purchaser argued that Defendants had waived applicability of the FAA because they did not timely raise it, the choice of law provision should control, the transaction did not involve interstate commerce and the district court erred when it determined that the FAA applied regardless of whether the transaction involved interstate commerce, and finally the district court erred when it found that the OUAA conflicts with the FAA. Purchaser noted the lack of explicit language in the district court's order regarding interstate commerce and claimed the court therefore failed to make a finding regarding that issue.
¶9 On appeal, Defendants argued that the choice of law and waiver arguments were settled by COCA in the prior appeal and thus are settled under the law of the case doctrine. Defendants further argued that they had not waived their right to compel arbitration under the FAA, that the Oklahoma choice of law provision is not controlling, and the district court properly determined that the FAA applied, therefore properly compelling arbitration. Finally, Defendants noted the distinct conflict between the FAA and Oklahoma case law as it applies to the arbitration provision in this case.
¶10 On April 9, 2019, the Court of Civil Appeals (COCA) reversed the district court's decision and remanded for an evidentiary hearing on Purchaser's contract revocation claim. COCA found that because the transaction did not involve interstate commerce and the parties agreed to be governed by Oklahoma law, Oklahoma law controls. COCA noted that the parties did not invoke the FAA in the Agreement or in the motions to compel arbitration. Finally, COCA held that the ruling from Shaffer v. Jeffery, 1996 OK 47, ¶ 26, 915 P.2d 910, 917, regarding determination of allegations of fraud in the inducement, does not inherently conflict with the FAA. Judge Fischer dissented, noting that due to repeal of the original Oklahoma arbitration act, Shaffer may no longer be good law and the OUAA mandates arbitration. Defendants filed a petition for rehearing which COCA denied.
¶11 On June 21, 2019, Defendants timely filed a petition for certiorari. Defendants argue that COCA erred in their analysis and application of United States Supreme Court precedent regarding interstate commerce and that arbitration is mandated under the FAA. Further, Defendants argue that legislative amendments to the OUAA have overturned Shaffer and therefore arbitration is also mandated under Oklahoma law.
¶12 On certiorari, Purchaser argues that COCA correctly determined the transaction did not involve interstate commerce. Additionally, Purchaser argues that Defendants recognized Shaffer as valid earlier and have waived and forfeited any right to contend otherwise for the first time now. In reply, Defendants argue that the issue of whether Shaffer is good law has been properly preserved and raised in the petition for certiorari. We previously granted certiorari.
IV. ANALYSIS
¶13 The underlying question before us is whether the district court or an arbitrator should determine the challenge of fraudulent inducement to the entirety of a contract which contains an arbitration clause. In 1996, we answered this question in Shaffer, 1996 OK 47, ¶ 26, 915 P.2d at 917. Due to subsequent legislative enactments, we are called upon to readdress the issue.
¶14 Although neither party directly raised the question of Shaffer's validity earlier, both parties have argued the applicability of the OUAA and both have also applied Shaffer at different times throughout the proceedings. Defendants specifically based their initial motions to compel arbitration on sections 1836 and 1838 of the OUAA. COCA also remanded the case the first time, in part, for consideration of whether Shaffer conflicts with federal law -- bringing its validity into question for the case at hand. We therefore conclude that the issue of Shaffer's validity in correlation with the OUAA was preserved in this case. Further, we have previously stated that "[i]f supported by law and evidence, the nisi prius judgment will be affirmed even if it was based on an incorrect theory and neither party tendered below an appropriate analysis of the applicable law." Akin v. Mo. Pac. R.R. Co., 1998 OK 102, ¶ 35, 977 P.2d 1040, 1054.
¶15 In Shaffer, the Court considered title 15, section 802(A) of the original Oklahoma Uniform Arbitration Act, 15 O.S.2001, §§ 801-818 (Original Act), which is extremely similar to federal law.[4] We recognized that the United States Supreme Court applies the separability doctrine for challenges of fraudulent inducement to an arbitration clause arising under the FAA -- separating the arbitration clause from the rest of the contract for review of the clause by a court -- but that challenges of fraudulent inducement to the entirety of a contract containing an arbitration agreement are reviewed by the arbitrator. Shaffer, 1996 OK 47, ¶¶ 15, 18, 915 P.2d at 915, 916. We held, however, that although the Original Act contained almost identical language to the FAA, separability did not apply to the Original Act. Id. ¶¶ 24, 26, 915 P.2d at 917-18. We noted that in Oklahoma, if a contract is procured by fraud, unless the party reaffirms it, there is no contract. Id. ¶ 21, 915 P.2d at 917 (citing Hooper v. Com. Lumber Co., 1959 OK 87, ¶ 12, 341 P.2d 596, 598. We also noted that a party cannot simultaneously both rescind and affirm a contract. Shaffer, 1996 OK 47, ¶ 25, 915 P.2d at 917 (citing State ex. rel. Burk v. Okla. City, 1976 OK 109, ¶ 12, 556 P.2d 591, 594. Therefore, we found that under the Original Act, the district court made the determination of fraudulent inducement regardless of whether the challenge is to the entire contract or to the arbitration clause only. Shaffer, 1996 OK 47, ¶ 26, 915 P.2d at 917-18.
¶16 In 2005, the Oklahoma legislature repealed the Original Act and replaced it with the new uniform arbitration act found in title 12, sections 1851-1881. 2005 Okla. Sess. Laws, ch. 364, § 7(C). The new act is also known as the Uniform Arbitration Act (OUAA) and governs all agreements to arbitrate after January 1, 2006. 12 O.S.2011, §§ 1851, 1854. Section 1880(A) of the OUAA mandates that "[i]n applying and construing the Uniform Arbitration Act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." 12 O.S.2011, § 1880.
¶17 Section 802(A) of the Original Act is identical to OUAA section 1857(A), and extremely similar to federal law.[5] When the Legislature enacted the OUAA, however, they added section 1857(C), which provides that "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." 12 O.S.2011, § 1857(C). We have since recognized this change while comparing state and federal law on the issue of separability, but without opportunity to apply it. See Rogers, 2005 OK 51 ¶ 13 n.5, 138 P.3d at 830 n.5.[6] We do so now.
¶18 "The goal of any inquiry into the meaning of a legislative enactment is to ascertain and follow legislative intent." Arrow Tool & Gauge, 2000 OK 86, ¶ 15, 16 P.3d at 1125. We presume the legislative intent is expressed in the text of the statute and that the legislature "intended that which it expressed" Id. Amendment of a plain, unambiguous statute indicates the legislature's intention "to change or alter the law rather than to clarify it." Video Gaming Techs., Inc. v. Tulsa Cty. Bd. of Tax Roll Corr., 2019 OK 84, ¶ 12, 455 P.3d 918, 921. If the earlier version of a statute has been judicially interpreted, a legislative amendment is presumed to change the existing law. Samman, 2001 OK 71, ¶ 13, 33 P.3d at 307. Because section 802(A) was the subject of a clear and unambiguous judicial interpretation in Shaffer, we hold section 1857(C)'s enactment changed the existing law.[7]
¶19 The language in section 1857, in light of its amendment after prior judicial pronouncement, mandates that determination of fraudulent inducement to the entire contract is a question for the arbitrator. Section 1857(C) makes Oklahoma's law uniform with the majority of other states in application of arbitration laws, thus following the legislative intent set out in section 1880. Section 1857(C) also makes Oklahoma's policy on separability fall in line with the United States Supreme Court's interpretation of title 9, section 2 of the Federal Arbitration Act on the issue of who determines claims of fraud in the inducement to the entirety of a contract that contains an arbitration clause. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L. Ed. 2d 1270 (1967); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L. Ed. 2d 1038 (2006); Nitro-Lift Techs., L.L.C. v. Howard, 568 U.S. 17, 133 S. Ct. 500, 184 L. Ed. 2d 328 (2012). Because Oklahoma law mandates arbitration here, the Court need not reach the question of interstate commerce.
V. CONCLUSION
¶20 The district court properly granted Defendants' motions to compel arbitration and motions to dismiss. Therefore, the Court of Civil Appeals opinion is vacated. The district court's judgment is affirmed.
COURT OF CIVIL APPEALS OPINION VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.
Concur: Gurich, C.J., Darby, V.C.J., Kauger, Winchester, Edmondson, Colbert, Combs (by separate writing), Kane, Rowe, JJ.

FOOTNOTES

[1] "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." 76 O.S.2011, § 2.

[2] Those provisions provide in relevant part: "an application for judicial relief under the Uniform Arbitration Act must be made by application and motion to the court and heard in the manner provided by law or rule of court for making and hearing motions." 12 O.S.2011, § 1856(A).
A. On application and motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
1. If the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and
2. If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate. . . .
12 O.S.2011, § 1858(A).
Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . Failure to state a claim upon which relief can be granted.
12 O.S.2011, § 2012(B)(6).

[3] On April 8, 2014, the district court denied the motions to dismiss and motions to compel, pending further determination of the fraud issue. Defendants filed petitions in error and the Court of Civil Appeals (COCA) reviewed the case. Signature Leasing, LLC v. Buyer's Group, LLC, No. 112,769 (Okla. Civ. App.)(consol. with No. 112,772). On October 20, 2015, COCA reversed the district court and remanded. On remand, COCA specifically ordered the district court:
to hold an evidentiary hearing in order to determine whether the transaction at issue involved interstate commerce and therefore the FAA. Rogers v. Dell Computer Corp., 2005 OK 51, ¶¶ 15-17, 138 P.3d 826[, 830-831].
Should the trial court determine the FAA applies, then it must send this case to arbitration. Under the FAA, "attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.[']" Nitro-Lift Technologies, L.L.C. v. Howard, ___ U.S. ___, 133 S. Ct. 500, 503, 184 L. Ed. 2d 328 (2012) (quoting Preston v. Ferrer, 552 U.S. 346, 349, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008). If, however, the trial court determines the FAA does not apply, then the trial court must determine whether Oklahoma's law that "allegations of fraud in the inducement of an agreement to arbitrate must be resolved by the court prior to either compelling arbitration or dismissing the case[," Shaffer v. Jeffery, 1996 OK 47, ¶ 26, 915 P.2d 910, 917,] conflicts with federal law on this issue. See Nitro-Lift, 133 S. Ct. at 504 ("'[W]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.'")(quoting Marmet Health Care Center, Inc. v. Brown, ___ U.S. ___, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (2012)); see also AT&T Mobility LLC v. Concepcion, 565 U.S. 333, 131 S. Ct. 1740, 1747, 179 L. Ed. 2d 742). In this event, the trial court must determine whether Oklahoma's law stating that a claim for fraud in the inducement of the contract as a whole must be resolved by the trial court prior to arbitration conflicts with the FAA.
Opinion at 9-10, Signature Leasing, LLC v. Buyer's Group, LLC, No. 112,769 (Okla. Civ. App. Oct. 20, 2015). On March 30, 2016, the district court held an evidentiary hearing.

[4] Section 802(A) provided in relevant part:
This act shall apply to a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties. Such agreements are valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.
15 O.S.1991, § 802(A). Section 2 of the Federal Arbitration Act provides:
A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2 (2018).

[5] "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." 12 O.S.2011, § 1857(A).

[6] "Under the newly enacted provisions of the OUAA, '[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.' 2005 Okla. Sess. Laws, ch. 364, § 7(C)." Rogers, 2005 OK 51 n.5, 138 P.3d at 830 n.5.

[7] When the Legislature adopted the OUAA, they adopted a modified version of the Uniform Arbitration Act of 2000. Sooner Builders & Invs., Inc. v. Nolan Hatcher Constr. Servs., L.L.C., 2007 OK 50, ¶ 22, 164 P.3d 1063, 1070. Section 1857(C) was adopted word for word as recommended by the Uniform Arbitration Act of 2000. While not binding, the comments therein reaffirm our standard rule that amendment of a judicially interpreted statute is presumed to change the law.
The language in Section 6(c), "whether a contract containing a valid agreement to arbitrate is enforceable," is intended to follow the "separability" doctrine outlined in Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395 (1967). . . . A majority of States recognize some form of the separability doctrine under their state arbitration laws. . . .
Other States have either limited or declined to follow the Prima Paint doctrine on separability. . . . Shaffer v. Jeffery, 915 P.2d 910 (Okla. 1996) (recognizing that majority of States apply the doctrine of separability but declining to follow the doctrine) . . . .
Uniform Arbitration Act, § 6, cmt. 4 (Dec. 13, 2000)(drafted by National Con'f of Comm'nrs on Uniform State Laws)(internal citations omitted). The Oklahoma legislature chose to enact the proposed language following separability, word for word, even in light of Shaffer being cited as an example of a state declining to follow separability. This reinforces our rule that legislative amendments of judicially interpreted statutes are intended to amend them.




COMBS, J., with whom, Gurich, C.J. and Kauger, J., join, concurring
¶1 The majority opinion overrules our holding in Shaffer v. Jeffery, 1996 OK 47, 915 P.2d 910, based upon the 2005 amendments to Oklahoma's version of the Uniform Arbitration Act (UAA), 12 O.S. 2011, §§1851-1881, and the rationale in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967).
¶2 In Shaffer v. Jeffery, we held that both allegations of fraud in the inducement of an arbitration agreement or fraud in the inducement of a contract which contains an arbitration agreement must be resolved by the district court first. Shaffer, 1996 OK 47, ¶26. We noted this deviated from Prima Paint Corp. v. Flood & Conklin Mfg. Co., where the United States Supreme Court held:
[I]f the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.
Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-404 (1967).
¶3 The Oklahoma version of the UAA was amended and recodified in 2005, almost 10 years after Shaffer; in particular, the majority focuses on 12 O.S. 2011, §1857 of the UAA which provides:
A. An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

B. If necessary, a court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.
C. An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.

D. If a party to a judicial proceeding challenges the existence of, or claims that a controversy is not subject to, an agreement to arbitrate, the arbitration proceeding may continue pending final resolution of the issue by the court, unless the court otherwise orders. (emphasis added).
The opinion notes that subsection C was added when it was recodified. It interprets this subsection to say that "determination of fraudulent inducement to the entire contract is a question for the arbitrator." Op., ¶19 (emphasis added). This is essentially the same thing the United States Supreme Court said in Prima Paint Corp. A claim attacking the enforceability of the arbitration provision itself may be challenged in court. However, a claim which attacks the existence of the contract in general, and not particularly against an arbitration agreement itself, would be for an arbitrator to decide.
¶4 The United States Supreme Court opinion, Nitro-Lift Techs., L.L.C. v. Howard, supports the severability theory. 568 U.S. 17, 133 S. Ct. 500, 184 L. Ed. 2d 328 (2012). Nitro-Lift Techs., L.L.C. held:
And when parties commit to arbitrate contractual disputes, it is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved "by the arbitrator in the first instance, not by a federal or state court." Preston v. Ferrer, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). For these purposes, an "arbitration provision is severable from the remainder of the contract," Buckeye, supra, at 445, 126 S.Ct. 1204, and its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide. (emphasis added).
Id. at 20-21. This language indicates when an arbitration agreement itself is challenged, the issue may be determined by a state court. If the court should determine the arbitration agreement is valid, the validity of the remainder of the contract is an issue for the arbitrator. However, under the UAA, an attack on the entire contract which contains an arbitration agreement, as opposed to a specific attack to the arbitration agreement itself, is to be resolved by the arbitrator in the first instance.
¶5 In the situation where a person specifically challenges the arbitration agreement, Prima Paint Corp., Nitro-Lift Techs. L.L.C., and todays' majority opinion would allow the court to hear the arbitration challenge first. Should the court find the arbitration agreement invalid, the matter would proceed in the court system. Should the court find the arbitration agreement valid, the entire proceeding would be deferred to the arbitration system.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2000 OK 86, 16 P.3d 1120, 71 OBJ 2896, ARROW TOOL & GAUGE v. MEAD
Discussed at Length
 2001 OK 71, 33 P.3d 302, 72 OBJ 2703, SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed at Length
 1959 OK 87, 341 P.2d 596, HOOPER v. COMMERCIAL LUMBER COMPANY
Discussed
 2005 OK 51, 138 P.3d 826, ROGERS v. DELL COMPUTER CORPORATION
Discussed at Length
 1996 OK 47, 915 P.2d 910, 67 OBJ 1193, Shaffer v. Jeffery
Discussed at Length
 2006 OK 90, 155 P.3d 16, BRUNER v. TIMBERLANE MANOR LIMITED PARTNERSHIP
Discussed
 2007 OK 12, 160 P.3d 936, OKLAHOMA ONCOLOGY & HEMATOLOGY P.C. v. US ONCOLOGY, INC.
Discussed
 2007 OK 50, 164 P.3d 1063, SOONER BUILDERS & INVESTMENTS, INC. v. NOLAN HATCHER CONSTRUCTION SERVICES, L.L.C.
Discussed
 2010 OK 3, 230 P.3d 853, ROGERS v. QUIKTRIP CORP.
Discussed
 1976 OK 109, 556 P.2d 591, STATE EX REL. BURK v. OKLAHOMA CITY
Discussed
 2019 OK 84, 455 P.3d 918, VIDEO GAMING TECHNOLOGIES v. TULSA COUNTY BD. OF TAX ROLL CORRECTIONS
Discussed
 1998 OK 102, 977 P.2d 1040, 69 OBJ 3512, Akin v. Missouri Pacific Railroad Co.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1851, Short Title
Cited
 12 O.S. 1856, Notice of Initial Application for Judicial Relief and Motion to Court Under the Uniform Arbitration Act
Cited
 12 O.S. 1857, Enforceability, Interpretation of Arbitration Agreements - Arbitration Proceeding During Dispute Over Agreement
Discussed at Length
 12 O.S. 1858, Refusal to Arbitrate - Absence of Enforceable Agreement - Court Orders to Arbitrate
Cited
 12 O.S. 1880, Application and Construction of Act - Uniformity of Law
Cited
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 802, Repealed
Cited
Title 76. Torts
 Cite
Name
Level

 76 O.S. 2, Liability for Damages for Willful Deceit
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA