MOORE v. BOB HOWARD GERMAN IMPORTS
2023 OK CIV APP 14
531 P.3d 657
Case Number: 120124
Decided: 04/12/2023
Mandate Issued: 05/11/2023
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2023 OK CIV APP 14, 531 P.3d 657

 

STEVE MOORE, Plaintiff/Appellant,
v.
BOB HOWARD GERMAN IMPORTS, LLC, an Oklahoma limited liability company, d/b/a MERCEDES-BENZ OF OKLAHOMA CITY and BOB HOWARD LUXURY AUTO GROUP, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE CINDY H. TRUONG, TRIAL JUDGE

AFFIRMED

Joseph T. Acquaviva, Jr., WILSON, CAIN & ACQUAVIVA, Oklahoma City, Oklahoma, and
Kevin Bennett, THE BENNETT LAW FIRM, Oklahoma City, Oklahoma, for Plaintiff/Appellant

Larry D. Ottaway, Michael T. Maloan, FOLIART, HUFF, OTTAWAY & BOTTOM, Oklahoma City, Oklahoma, for Defendants/Appellees

GREGORY C. BLACKWELL, PRESIDING JUDGE:

¶1 Steve Moore appeals the district court's granting of a motion to compel arbitration in favor of Bob Howard German Imports, d/b/a Mercedes-Benz of Oklahoma City and Bob Howard Luxury Auto Group (collectively, the dealership). Moore argues on appeal that the arbitration provision was invalid because it was induced by fraud. On review, we find that the record does not show fraudulent inducement and therefore affirm the trial court's decision.

BACKGROUND

¶2 This case begins with Moore's purchase of a used car.

¶3 Sometime later, Moore alleges to have discovered that, despite the dealership's assertions to the contrary, the car had been involved in a prior accident and had undergone significant repairs, none of which had been disclosed to Moore. Moore filed suit and asserted causes of action for fraud, fraudulent inducement, negligence, violations of Oklahoma's consumer protection act, and "the tort of outrage."

¶4 During the purchasing process, Moore signed many documents. As relevant here, however, at least two contained provisions allowing either party to compel arbitration in the event of a dispute. They were (1) the sales contract (sometimes referred to as the retail installment sales contract, or RISC) and (2) a dispute resolution clause, contained within a separate one-page agreement also addressing two other matters. The sales contract listed the interest rate that Moore would be paying on his vehicle loan. Moore was interested in obtaining a better interest rate, so he signed this document with the mutual understanding that the dealership would try to obtain a better rate, and if they could, a new sales contract would have to be prepared and signed. A few days later, after Moore returned home to Texas, the dealership was able to obtain a more favorable rate for Moore. The dealership sent Moore an updated, unsigned sales contract that was identical to the first sales contract except for the updated rate and payment information. Moore received the new contract, signed it at his home in Texas, and returned it.

¶5 One month after filing its answer, the dealership filed a motion to compel arbitration consistent with the sales contract and the dispute resolution clause. Moore opposed the motion, claiming that his agreement to the arbitration provisions was fraudulently induced. The trial court held an evidentiary hearing at which Moore and the dealership's finance director, who facilitated the signing of the sales documents, both testified.

¶6 From this testimony, we can distill the following facts as related to the sale. According to the finance director, she handed the dispute resolution clause to Moore and said, "This is the arbitration form and security agreement. If we have any issues between you or I or the dealership that arise, we'll go to arbitration." Similarly, the finance director testified that she handed the sales contract to Moore, stating in pertinent part, "You're going to sign the bottom of the contract for arbitration and then initial the bottom of the page."

¶7 Moore did not dispute that he signed the dispute resolution clause but claimed that he remembered being told that the clause "did not apply" to him. However, on cross-examination, he agreed that he had testified previously that he couldn't recall if the finance director had said that or not. Moore's testimony is also unclear as to whether he claimed to have been told the entire sales contract did not apply to him or just the arbitration provision. The finance director testified that she did not and has never told a customer that a provision did not apply to them.

¶8 After hearing the testimony, the trial court granted the dealership's motion to compel arbitration finding no fraudulent inducement in the execution of the arbitration agreement. The dealership then prepared a proposed order, but Moore would not agree to sign it because the order did not identify which arbitration agreement was to be enforced.

STANDARD OF REVIEW

¶9 Generally, "a determination of the existence of a valid enforceable agreement to arbitrate is a question of law to be reviewed by a de novo standard." Signature Leasing, LLC v. Buyer's Group, LLC, 2020 OK 50466 P.3d 544Bruner v. Timberlane Manor Ltd. Partnership, 2006 OK 90155 P.3d 16de novo review is proper. Signature Leasing, 2020 OK 50Bruner, 2006 OK 90de novo, but we will review the trial court's factual findings for clear error.Atkinson v. Rucker, 2009 OK CIV APP 30209 P.3d 796

ANALYSIS

¶10 We must decide whether the record supports a finding that Moore was not fraudulently induced into signing the arbitration agreement. Fraud is a generic term with multiple meanings and is divided into actual fraud and constructive fraud. Patel v. OMH Medical Center, Inc., 1999 OK 33987 P.2d 1185Sutton v. David Stanley Chevrolet, Inc., 2020 OK 87475 P.3d 847Patel, 1999 OK 33

The Duty to Clear a False Impression

¶11 Moore's fraudulent inducement claim is based on his allegation that the dealership's finance director did not explain to Moore any of the rights, duties, or obligations of the arbitration provisions he executed. In failing to do so, Moore argues, the finance director breached the duty established by the Oklahoma Supreme Court in Sutton v. David Stanley Chevrolet--a case that also involved the sale of a car and a dispute over the arbitration provision. Ultimately, the Supreme Court in Sutton held that the arbitration provision was fraudulently induced because the car dealer breached its duty to "clear the false impression created." Sutton, 2020 OK 87

¶12 The false impression in Sutton, the Court held, was created by both the finance manager's representations and the peculiar structure of the purchase agreement. Id. ¶ 20. The Court in Sutton based its holding on the following specific facts:

[T]he finance manager stated the purpose of the purchase agreement was for verifying Sutton's personal information, the vehicle information on both vehicles, and how much he would be paying.... Sutton executed the signature lines on the purchase agreement because of the representation he was only verifying information.... The trade-in vehicle section contained information on the trade-in. As with the other sections of the purchase agreement, Sutton's impression was that his signature was needed only for the purpose of verifying this information. However, unlike these other sections of the purchase agreement, a totally unrelated provision is tucked-in right before the apparent signature line for the trade-in vehicle section. This unrelated provision is the [arbitration provision] which is in a much smaller font size.

Id. These "representations of the finance manager combined with the structure of the purchase agreement created a false impression that the purpose of Sutton's signature was to only verify information concerning his trade-in vehicle." Id.

¶13 Here, the document structure and the representations of the dealership's finance director are sufficiently different to distinguish this case from Sutton. The dispute resolution clause in this case is a single-page document with a large, bold-faced title reading "DISPUTE RESOLUTION CLAUSE" in the middle of the page followed by a paragraph of text. Moore signed directly beneath this paragraph. At the bottom of the first page of the sales contract is a box that contains the phrase "Agreement to Arbitrate" in bold. Also inside that box are Moore's signature and two sentences indicating that the signing party agrees to arbitration pursuant to the arbitration provision on page four of the sales contract. Taking up over half of page four is the full arbitration provision. Below this full provision are two signatures by Moore. The second signature is beneath bold-face text that says the signing party has agreed to the terms of the contract, was free to read and review the contract before signing, and has "read all pages of this contract, including the arbitration provision above, before signing below."

¶14 Our review of the agreements in question suggests nothing like the obfuscation the Court identified in Sutton, where "a totally unrelated [arbitration] provision" was "tucked-in right before the apparent signature line for the trade-in vehicle section." Id. Here, in addition to signing the entirely separate dispute resolution clause, Moore signed the sales contract in three spots on two pages containing clear arbitration language. After obtaining the new interest rate, Moore signed the agreement again in those same three spots. As the Court noted in Sutton, it would be hard to argue one did not understand what they were signing when the provision was "plainly captioned and separately signed." Id. ¶ 23.

¶15 The representations of the finance director can also be distinguished here. Unlike in Sutton where the dealership did not mention the arbitration agreement, the finance director here testified that she specifically called Moore's attention to it. Moore does not dispute this, but claims the director also told him that the arbitration provision did not apply to him. As referenced above, Moore's testimony was unclear as to whether he was referring to the arbitration provision or the entire set of documents and whether he even remembered the finance director saying that the provision didn't apply to him. Conversely, the finance director's testimony was unequivocal: she stated that she would never tell a customer certain provisions do not apply to them. Because of the uncertainty and conflicting testimony, we do not find that it was clear error for the trial court to favor the finance director's testimony over Moore's.

¶16 While the finance manager and the structure of the document in Sutton created a false impression that Sutton was only verifying information, the finance director and the documents here made it clear that Moore was agreeing to arbitration.

¶17 Additionally, we note that Moore misconstrues the duty imposed by the Sutton Court and urges us to place the burden of explaining arbitration provisions on car dealers. The only duties imposed by Sutton are to not create the false impression that one is signing a document for some other reason than the document itself states and to clear such a false impression, should one arise. Sutton does not create a duty to affirmatively explain the full import of a contractual provision simply because that provision is brought to the attention of the signatory. The Court makes clear that this duty is "not a duty to read an entire contract; it is the duty to disclose enough information that will clear the false impression created ...." Id. (emphasis added). In Sutton, the false impression "shrouded the existence" of the arbitration agreement, and this imposed a duty on the car dealer to bring that provision to light. Id. ¶ 20. Here, we find that because no false impression was created, no such duty arose.

Multiple Arbitration Provisions

¶18 Moore raises two issues with the fact that he signed multiple arbitration provisions. First, Moore claims that the finance director had a duty to explain the differences in the two arbitration provisions. However, Moore does not tell us what the differences are, and we fail to see any relevant differences

¶19 Second, after the district court found no fraudulent inducement, Moore did not agree to sign the proposed journal entry because it did not identify which arbitration agreement was to be enforced. We agree with the district court that any question as to which of the provisions apply, and the parties' various rights and duties under each, are questions for the arbitrator in the first instance. See Signature Leasing, 2020 OK 50

CONCLUSION

¶20 We find nothing in the record to indicate the dealership created a false impression in relation to whether Moore was signing an arbitration agreement. The record reflects quite the opposite: that Moore was explicitly made aware that he was signing for arbitration. Accordingly, the trial court was correct in finding no fraudulent inducement. The trial court's order granting the motion to compel arbitration is AFFIRMED.

WISEMAN, J. (sitting by designation), concurs, and FISCHER, J., concurs in part and concurs in result.

 

 

FISCHER, J., concurring in part and concurring in result:

¶1 I agree with the result reached by the Majority but would have applied a different standard of review. The arbitration agreement in this case provided that it was subject to and enforceable pursuant to the terms of the Federal Arbitration Act, 9 U.S.C.A. §§ 1 through 16. And, the parties agree in their appellate briefing that the Federal Arbitration Act governs this litigation. When the Federal Arbitration Act applies, "we review the arbitration provisions in light of applicable principles of arbitration law developed under the FAA." Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc., 2007 OK 12160 P.3d 936

¶2 As the Majority holds, whether the parties have agreed to submit a particular dispute to arbitration is an issue for the court to decide unless the parties provide otherwise. AT & T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995). Accord Signature Leasing, LLC v. Buyer's Group, LLC, 2020 OK 50466 P.3d 544Rogers v. Dell Computer Corp., 2005 OK 51138 P.3d 826Cummings v. FedEx Ground Package Sys., Inc., 404 F.3d 1258, 1261 (10th Cir. 2005) (deciding the appropriate standard of review in appeals from decisions refusing to compel arbitration)). Accord Signature Leasing, 2020 OK 50Oklahoma Oncology, 2007 OK 12

¶3 When the facts are not disputed, "the existence of an agreement to arbitrate is a question of law . . . ." Bruner v. Timberlane Manor Ltd. P'ship, 2006 OK 90155 P.3d 16

¶4 "However, an application to compel arbitration may present questions of fact and law as to the existence or the enforceability of an arbitration agreement." Id. The district court's "adjudication of a fact . . . is reviewed by different standards according to the type of controversy and type of adjudication made." Christian v. Gray, 2003 OK 1065 P.3d 591Id. (citing Barnes v. Oklahoma Farm Bureau Mut. Ins. Co., 2000 OK 5511 P.3d 162See Bradley v. Clark, 1990 OK 73804 P.2d 425

¶5 In this case, the parties did not agree on all of the facts material to the existence or enforceability of the arbitration agreement. The district court properly conducted an evidentiary hearing but resolved those factual disputes in favor of the Dealership and granted the motion to compel arbitration. One issue raised by this appeal is the proper appellate standard for reviewing those findings of fact. In my view, the any-competent-evidence standard of review is required.

¶6 Although the Federal Arbitration Act controls the substantive rights of the parties, "the Oklahoma Uniform Arbitration Act . . . controls the procedure for enforcing the FAA." Williams v. TAMKO Building Prods., Inc., 2019 OK 61451 P.3d 146Rogers v. Dell Computer Corp., 2005 OK 51See Sutton v. David Stanley Chevrolet, Inc., 2020 OK 87475 P.3d 847so long as the Act does not frustrate the purposes underlying the Federal Arbitration Act.")(Emphasis added).

¶7 One substantive right provided by the Federal Arbitration Act is stated in Section 4 of the Act:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury . . . . 

9 U.S.C. § 4 (emphasis added). Because Moore did not request a jury to determine the fact issues necessary to decide whether a valid agreement to arbitrate exists, those facts were determined by the district court.

¶8 Moore did not dispute that he signed the two documents containing the arbitration agreements. He argued that the Dealership's finance director told him that the arbitration agreements did not apply to him, a "fact" the finance director disputed.

¶9 To determine the existence of an enforceable arbitration agreement, the district court "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995). "The provisions of arbitration agreements will be examined under general principles of state contract law." Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc., 2007 OK 12160 P.3d 936Kaplan, 514 U.S. at 944, 115 S. Ct. at 1924). See Harris v. David Stanley Chevrolet, Inc., 2012 OK 9273 P.3d 877Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 563 P.3d 541See also Oklahoma Oncology, 2007 OK 12Thompson v. Bar-S Foods Co., 2007 OK 75174 P.3d 56715 O.S. § 2

¶10 In Oklahoma, for a contract to be enforceable, a party must consent to the terms of the contract and that consent must be "free." 15 O.S. § 5115 O.S. § 5215 O.S. § 53See 15 O.S. § 5815 O.S. § 60Bradley v. Clark, 1990 OK 73804 P.2d 425

FOOTNOTES

Petition, pg. 10.

Howell's Well Serv., Inc. v. Focus Grp. Advisors, LLC, 2021 OK 25507 P.3d 623See I. T. K. v. Mounds Pub. Sch., 2019 OK 59451 P.3d 125de novo but findings of fact are reviewed for clear error).

I.T.K. v. Mounds Pub. Sch., 2019 OK 59451 P.3d 125

Sutton Court held that the finance manager was under a duty to disclose material information to clear the false impression, and Sutton's failure to read the sales contract was no defense against establishing such duty. Sutton, ¶ 21. Moore could only use this argument if he could have established that the finance director had a duty to clear a false impression. Because no such false impression was created under these facts, no duty arose. The choice to read or not to read part or all of a contract provision remains that of the party signing the contract.